## H. WEHMANN vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RY. CO.

Submitted on brief by appellant, argued by respondent, June 1, 1894. Affirmed June 22, 1894.

No. 8901.

**Liability of a common carrier of goods for default of connecting carrier in through line.**

Where two or more common carriers, whose lines form a continuous line, establish joint or through tariffs of rates, they do not, by that alone, become joint carriers, nor any one of them become liable for the defaults

of any other, but the carrier receiving goods for carriage over the continuous line becomes agent for each to contract for carriage over their respective lines.

**Duty of each to carry to end of its line and there notify and deliver to the next.**

Under such an arrangement it is the duty of the carrier receiving goods for carriage over the continuous line to carry them to the end of its line, and there deliver them to the next carrier to which attaches the duty to receive and carry and deliver them to the next carrier, and so on till they reach their destination.

**Each successive carrier is liable as carrier until it performs.**

The liability of each carrier continues until it has carried the goods to the end of its line, and delivered them to the next carrier, or given it notice of their arrival, and a reasonable time has elapsed for it to receive them.

**Consideration for contract to be exempt from common law liability.**

A stipulation that a common carrier shall be exempt from any of its common-law liability needs a consideration to make it binding.

**What is not such consideration.**

The mere receipt of the goods and undertaking to carry is not a sufficient consideration.

**Consideration by concession in rates under Interstate Commerce Act.**

No statement or concession in rates will be presumed as such consideration, where such abatement is forbidden by law.

Appeal by defendant, the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, from an order of the District Court of Hennepin County, *Seagrave Smith,* J., made December 30, 1893, denying its motion for a new trial.

On November 17, 1891, the plaintiff, H. Wehmann, delivered to defendant at Minneapolis, one hundred and fifty barrels of flour worth $795, consigned to W. W. Jones at Philadelphia, Pa., to be by it carried to Gladstone, Wis., and there delivered to the Lehigh Valley Transportation Company, the connecting carrier. The total freight to Philadelphia was $84. The through bill of lading delivered by defendant contained a clause exempting it from all liability as a common carrier after the flour should reach its warehouse at Gladstone. The flour reached that place on November

21st and was immediately unloaded into defendant's warehouse, and remained there until November 29th when it was destroyed by fire without fault on the part of defendant. This action was to recover its value. The defendant claimed that at the date of the fire, its liability was not that of common carrier but only that of warehouseman. When the evidence was all submitted, the Judge directed the jury to return a verdict for the plaintiff for the value of the flour, with interest. Defendant excepted, moved for a new trial, and being denied, appeals. See *Minneapolis, St. P. & S. Ste. M. Ry. Co.* v. *Home Ins. Co.*, 55 Minn. 236.

*Alfred H. Bright,* for appellant.

It is a well known fact that at the present day, common carriers seldom, if ever, take freight of any kind for transportation under a common law contract. Carriers have the right to limit their liability and this right has been uniformly affirmed by the Federal Courts. *Hart* v. *Pennsylvania Railroad Co.*, 112 U. S. 331; *The Bermuda*, 29 Fed. Rep. 399; *The New Orleans*, 26 Fed. Rep. 44; *The Lydian Monarch*, 23 Fed. Rep. 298; *York Co.* v. *Central Railroad*, 3 Wall. 107; *Railroad Co.* v. *Lockwood*, 7 Wall. 357; *Express Co.* v. *Caldwell*, 21 Wall. 264; *Railroad Co.* v. *Pratt*, 22 Wall. 123; *Bank of Kentucky* v. *Adams Ex. Co.*, 93 U. S. 174; *Railway Co.* v. *Stevens*, 95 U. S. 655; *Phœnix Ins. Co.* v. *Erie & W. Trans. Co.*, 117 U. S. 312; *Christenson* v. *American Express Co.*, 15 Minn. 270; *Ortt* v. *Minneapolis & St. L. Ry. Co.*, 36 Minn. 396; *Hutchinson* v. *Chicago, St. P. M. & O. Ry. Co.*, 37 Minn. 524; *Hull* v. *Chicago, St. P., M. & O. Ry. Co.*, 41 Minn. 510; *Minneapolis, St. P. & S. Ste. M. Ry. Co.* v. *Home Ins. Co.*, 55 Minn. 236.

With this state of law and fact it would seem that if there is any presumption, it is that the rates in the published tariff are based on a limited, and not on a common law, contract of carriage. The defendant should certainly have been permitted to show what was the fact and long established custom regarding said contracts upon which said rates were based. The exclusion of this offer was error.

The bill of lading contains this clause: "This company is not to be held responsible as common carriers for any loss or injury to

said property after its arrival at its warehouse at Gladstone, or for any loss or damage thereto, or for any delay in transportation, or delivery thereof, by any connecting or succeeding company or carrier."

This shipment, being an interstate, shipment is not affected by the State statute prohibiting any limitation of the common law liability of carriers upon any property delivered to a carrier to be transported from one point to another within this State.

*Flannery & Cooke*, for respondent.

The appellant in conjunction with the Lehigh Valley Transportation Company and the Lehigh Valley Railroad Company, made and published a joint tariff of rates on flour and mill stuffs in car load lots from Minneapolis to Philadelphia, as provided for in Section 6 of the Interstate Commerce Law, 24 U. S. Stat. 379, as amended March 2, 1889, 25 U. S. Stat. 855. The effect of making and publishing such joint tariff of rates under the law was to create a new and independent line between those points. *Chicago & N. W. Ry. Co.* v. *Osborne*, 52 Fed. Rep. 912; *United States* v. *Mellen*, 53 Fed. Rep. 229; *Interstate Com. Comm.* v. *Cincinnati, N. O. & T. P. Ry. Co.*, 56 Fed. Rep. 925.

The making and publication of the joint tariff constituted the three companies making it a new and independent line, and the shipment of the flour from Minneapolis on said rate was a through shipment over a single continuous line upon a through rate, and the defendant was liable as a common carrier for failure to deliver it at Philadelphia. *Hill Mfg. Co.* v. *Boston & Lowell R. Co.*, 104 Mass. 122; *Block* v. *Fitchburg Railroad Co.*, 139 Mass. 308; *Railroad Co.* v. *Pratt*, 22 Wall. 123; *Railway Co.* v. *McCarthy*, 96 U. S. 258; *Quimby* v. *Vanderbilt*, 17 N. Y. 306.

It is conceded that a common carrier may limit his common law liability by a special contract if the limitation is based upon a consideration, and is in itself just and reasonable. But in the case at bar, there was no consideration to support the contract limiting defendant's common law liability. Defendant did not and could not offer to plaintiff the alternative of having his flour transported under its common law liability or under a limited liability. The

limitation was not just and reasonable in the eye of the law.　*Bissell* v. *New York Cent. R. Co.*, 25 N. Y. 442; *Mercantile Mutual Ins. Co.* v. *Chase*, 1 E. D. Smith, 115; *Nelson* v. *Hudson River R. Co.*, 48 N. Y. 498; *Southern Express Co.* v. *Moon*, 39 Miss. 822; *Brown* v. *Manchester, S. & L. Ry. Co.*, 9 Q. B. D. 230; *Manchester, S. & L. Ry. Co.* v. *Brown*, 8 App. Cas. 703; *Lewis* v. *Great Western Ry. Co.*, 3 Q. B. D. 195; *Booth* v. *Northeastern Ry. Co.*, L. R. 2 Ex. Cas. 173.

When goods are delivered to a common carrier to be transported over his railroad to his depot in a place named, there to be delivered to a second line of conveyance for transportation further on, the common law liability of a common carrier remains on the first carrier until he has delivered the goods for transportation to the next one.　His obligation while the goods are in his depot does not become that of warehouseman.　*Railroad Co.* v. *Manufacturing Co.*, 16 Wall. 318; *Myrick* v. *Michigan Cent. R. Co.*, 107 U. S. 102; *McDonald* v. *Western R. Corp.*, 34 N. Y. 497; *Irish* v. *Milwaukee & St. P. Ry. Co.*, 19 Minn. 376; *Lawrence* v. *Winona & St. P. Ry. Co.*, 15 Minn. 390; *Conkey* v. *Milwaukee & St. P. Ry. Co.*, 31 Wis. 619; *Nashua Sock Co.* v. *Worcester & N. R. Co.*, 48 N. H. 339.

GILFILLAN, C. J.　The defendant had a connection with the Lehigh Valley Transportation Company and the Lehigh Valley Railroad Company, forming a continuous line from Minneapolis to various points in the east; the defendant's part of such continuous line being by rail from Minneapolis to Gladstone, Mich., the Transportation Company's part by boat from Gladstone to Buffalo, N. Y., and the Lehigh Valley Railroad Company's from Buffalo by rail to various points in the east, among them to Philadelphia.　The three carriers had established and published joint or through tariffs of rates for freight carriage from Minneapolis to the various points in the east to which the continuous line extended, so as to come within the provisions of 25 U. S. Stat. ch. 382, p. 855.

Plaintiffs shipped with defendant, at Minneapolis, a car load of flour, consigned to a party named in the bill of lading at Philadelphia.　It arrived at Gladstone November 21, 1891, was put in defendant's warehouse at that place, where it remained till No-

vember 29th, when it was destroyed by fire. There was no evidence on the trial that notice of the arrival of the flour at Gladstone was given to the Transportation Company or to the plaintiff.

We do not think the establishing of joint or through rates in such cases of itself makes the different carriers in the continuous line joint carriers for the line, or makes any one of the carriers liable for the defaults of any of the others. At the most, the receiving carrier would be agent for each of the others to contract for carriage over their respective lines, so as to create a duty on each to receive goods at the point where the preceding carrier's line ends, and carry them to the end of its part of the line, and deliver them to the carrier next beyond.

The bill of lading executed by defendant to plaintiff cannot be construed to be a contract on its own behalf to carry from Minneapolis to Philadelphia, or anything more than a contract to carry over its own line to Gladstone, and there deliver to the Transportation Company.

Under such an arrangement for a continuous line and joint or through rates it is the duty of the first or receiving carrier, on receiving goods for carriage to any point on the continuous line beyond its own line to carry them with due dispatch to the end of its line, and there deliver them to the next carrier, whose duty it is to receive and carry them with due dispatch to their place of destination, and deliver them to the owner or consignee; or, if the place of destination be beyond its own line, to deliver them at the end of its line to the next carrier, to which a like duty will then attach. In such case, the owner, by delivering his goods to be carried through, does not contemplate nor make a contract for storage. His contract is for carriage, and, until the goods reach their final destination, he has a right to a continuous carrier's duty and responsibility, which cannot, without his consent, be changed to the duty and responsibility of a warehouseman, however convenient that might be for the carrier. And, from the time its duty of carrier attaches, any carrier in the line can discharge itself of the responsibility as such only by performing its full duty by carrying the goods, and delivering them to the next carrier if they are to go beyond its line. The responsibility of the preceding carrier does not cease until the responsibility of the next one attaches.

Any other rule would make any arrangement for a continuous line and through rates a snare to the public.

The liability of the defendant is to be determined as though its contract had been to carry to Gladstone, and there deliver to any consignee.

There is no express evidence on the point, but under the arrangement for a continuous line, it is to be presumed that the Transportation Company had an agent at that point, to whom the flour might have been delivered, and to whom notice of its arrival might have been given; and that the defendant knew who that agent was.

When the consignee resides at the place of destination, or has an agent there, authorized to receive the goods, and that is known to the carrier, the latter's liability as carrier does not end, and the liability becomes that of a warehouseman, until the lapse, after notice to such consignee or agent that the goods have arrived, of a reasonable time to receive and remove them. *Derosia* v. *Winona & St. Peter R. Co.*, 18 Minn. 133 (Gil. 119); *Pinney* v. *First Division St. P. & P. R. Co.*, 19 Minn. 251 (Gil. 211).

As the flour was not delivered to the Transportation Company, nor notice of its arrival given to its agent, so that its responsibility as carrier might attach, the responsibility of defendant as carrier had not ended at the time of the fire, unless, by virtue of a clause in the bill of lading in these words: "It being further expressly agreed that this company assumes no liability, and it is not to be held responsible as common carriers, for any loss or injury to said property after its arrival at its warehouse aforesaid, or for any loss or damages thereto, or any delay in transportation or delivery thereof, by any connecting or succeeding carrier."

Conceding that, because this was a shipment for carriage beyond the limits of the state, the statutes of the state do not apply, and that the validity of the clause is to be determined by the principles of the common law, then the question arises, was there a consideration to support it? Such a clause, to be of force, must stand as a contract between the shipper and the carrier, and, as in the case of all contracts, there must be a consideration for it. One exercising the employment of a common carrier of goods is bound to receive and carry such (within the class of goods that he carries) as are tendered to him for the purposes, and, in the absence of spe-

cial contract, to carry them with the full common-law liability of a common carrier. His receipt of and undertaking to carry them, being a duty imposed on him by law, is not a consideration to support such special contract. There must be some other. That is generally furnished by some concession in rates. And, where the agreement is set forth in the contract for carriage, it would probably be presumed that, in a case where parties could make any, there was some such concession as a consideration for relieving the carrier of part of his common-law liability. But in such a case as this, any abatement of rates is forbidden by act of congress, and therefore none can be presumed.

The tariff of joint rates in the case makes no mention of any limitation of liability. They are to be taken, therefore, as rates established for carriage with full common carrier's liability; and under the act of congress no abatement could be made to support a contract for a limited liability.

The clause is void for want of a consideration to support it.

Order affirmed.

. COLLINS and BUCK, JJ., took no part in the decision.

(Opinion published 59 N. W. 546.)