## Minerva Blair, Defendant in Error, v. The American Forwarding Company, Plaintiff in Error.

### Gen. No. 15,174.

COMMON CARRIERS—*when waiver of liability established.* *Held,* under the evidence, that the shipper had given authority to an agent which authorized a shipment at reduced rates upon condition that waiver of liability as at common law be made.

SMITH, J., dissenting.

Error to the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed. Opinion filed January 24, 1911.

**Statement by the Court.** Defendant in error, Minerva Blair, brought suit in the Municipal Court against the plaintiff in error, the American Forwarding Company. A jury trial was had, resulting in a verdict and judgment against the defendant for $278.75, to reverse which the cause is before us on a writ of error.

Defendant in error claimed damages sustained by reason of the alleged failure of plaintiff in error to safely carry and deliver to her a box containing some clothing and other articles, delivered to it September 26, 1906.

It appears that in September, 1906, plaintiff resided in Peru, Indiana, and, being about to remove to Long Beach, California, boxed her household goods for shipment to that point. After having the box addressed to her brother, "Deo Hauk, Long Beach, California," she turned it over to one Stephens, of Peru, to attend to details of its shipment. Upon directions from Stephens, the Peru Teaming Company, took the box, thus marked, and delivered it to the freight depot of the Wabash Railroad there, and billed it to the defendant at Chicago. The receipt, or bill of lading, had printed on its face, "Released and at owner's risk," and the name of Jesse Stephens as consignor was signed upon it. The freight was prepaid to Chicago at the low rate accorded for transportation where it is shipped at owner's risk, and the Wabash freight receipt, or bill of lading, was mailed to the defendant company, with the statement that the box was "to be forwarded to Long Beach, California." On the 26th of September the Peru Teaming Company received from the defendant company its bill of lading, which the teaming company turned over to Stephens, and Stephens sent it to Long Beach, California, where it reached the plaintiff. On October 9th the defendant company sent a teaming company and procured the box from the Wabash freight depot in Chicago, and brought it to defendant's warehouse. At this time, and for several years pre-

viously, the defendant had been engaged in Chicago, receiving at its warehouse goods of persons who have less than a carload lot, which they desired to have forwarded from Chicago to any given point. Such goods are held in its warehouse until sufficient quantity, destined for a point of shipment, belonging to other persons, are received, sufficient in the aggregate to make up a carload. When a carload is thus assembled, the goods, marked with the names of their several owners, are placed in an ordinary freight car belonging to the railroad company which is to transport the goods. The car is billed to some representative of the defendant, at the terminal point of shipment, from whom the various owners of the goods in the car can get them. The defendant makes a lump charge to each shipper, which covers its services for receiving, warehousing, loading and forwarding the goods, and also the shipper's proportion of the freight charge of the railroad company for their transportation. The freight rate on household goods in carload lots from Chicago to Los Angeles, the terminal point, was $1.12½ per hundred pounds. The defendant charged the plaintiff $1.80 per hundred pounds, and the difference between these sums covered the compensation of the defendant—the freight to be paid to the railroad company—transfer charges, etc. The freight rate to Los Angeles on less than carload lots was $2.30 per hundred pounds.

The defendant company did not own any cars, tracks, locomotives, or railroad equipment, or any interest in any railroad or railway. It did not own or have any interest in the car in which the goods were forwarded, nor in any part of the tariff or freight charge of the railroad company.

On October 10th defendant had at its warehouse sufficient goods, destined for Los Angeles, to make up a carload. Its foreman loaded a Rock Island car with goods, including plaintiff's box, and notified the railroad company that the car was ready for shipment to the Pacific Coast Freight Company, Los Angeles. The

railroad company sealed up the car, placed a card upon it showing its destination, and moved it away, after which the defendant had no custody or control of the car or its movements. The car left Chicago the same day, and, on the next, the car and its contents were destroyed by fire on the tracks of the Rock Island Railroad Company near Joliet. Plaintiff was notified by defendant of the loss on October 12, 1906.

When the car was turned over to the Rock Island Railroad Company, the defendant signed an instrument, releasing the railroad company from liability in excess of $5 per hundred pounds.

The Pacific Coast Freight Company of Los Angeles, to whom the car was consigned, did not charge defendant for distributing and handling goods at that point. Their charges were collected from the owners of the goods. They got the teaming and often the storage in their warehouse.

The receipt, or bill of lading, issued by defendant to plaintiff, was as follows:

"Inland Form 1
Inland Bill of Lading
No. 8578.

THE AMERICAN FORWARDING AND MERCANTILE CO.

General Office: Security Bldg., Cor. Madison St. and 5th Ave., Chicago, Ill.

Forwarders, Distributers, Domestic and Foreign Freight Contractors.

Sept. 26, 1906.

Apply for delivery to Pacific Coast Frt. Co., Los Angeles, Calif.

READ THE MUTUAL CONDITIONS OF THIS CONTRACT.

Received, in apparent good condition by the American Forwarding and Mercantile Co., except as otherwise noted herein, for account of M. Jesse Stephens of Peru, Ind., the property described herein, to be forwarded to marked Deo Hauk, Long Beach, Calif., subject however to the following conditions, agreements and stipulations:

1. The American Forwarding and Mercantile Company, hereinafter designated as the Company and ..............hereinafter designated as the Shipper, agree that the said Company is hereby constituted the agent of the said Shipper for the purpose of forwarding the goods described herein to the destination given above.

2. The Company agrees to forward the goods herein mentioned to..................or some other distributing point as soon as a carload has been accumulated, and is not to be held liable for any loss or damage arising from the detention of the goods for that purpose, nor for the neglect or refusal of any carrier to receive and forward the same.

3. It is expressly agreed and understood that in case of loss or damage to said property while not in the actual possession of said Company, no action, suit, or proceeding shall be instituted by said Shipper against said Company, but said Shipper shall proceed to collect the damages from the Carrier, insurance company, or other person at fault.

4. It is understood and agreed that the transit insurance covers only damages arising from fire, derailments of cars and collisions, any damage arising from other causes while the goods are in possession of the Company, Carriers or other Persons, shall be settled on the basis of $5.00 per cwt. of goods so damaged.

5. The Company shall in no event be liable for loss by fire, floods, insurrections, riots, acts of God, civil or military authority or strikes, but only for damages as may arise from fraud or neglect of its servants, and then only when claim is presented within fifteen days from the arrival of the goods at their final destination.

And finally, in accepting this Bill of Lading, the Shipper, owner and Consignee of the goods, or holder of this Bill of Lading, agree to be bound by all of its stipulations, exceptions and conditions, whether written or printed herein, as fully as if they were all signed by such Shipper, Owner, Consignee or Holder.

....................................................

DESCRIPTION OF ARTICLES.

....................................................

No. 1 box H. H. Goods.

Car No................

.................................................

Weight 340 Rate from Chicago, Ill., to Long Beach,
    Cal. per Cwt. $1.80   $6.12
    (Subject to correction)
Other charges, viz.................................
Total to collect for our account....................
Marks: Marked Deo Hauk, No. 1 inclusive
From Jesse Stephens   Consigned to Deo Hauk
Place or origin Peru, Ind. of Long Beach, Calif.
Remarks: ...........................................
        THE AMERICAN FORWARDING AND MERCANTILE CO.
                                            Per D.''

The freight bill, issued by the Rock Island Railway
Company, covering the carload of freight which in-
cluded plaintiff's box, expressly released the company
from all liability for loss or damage in excess of $5 per
hundred pounds, and this was signed by the defendant
company.

At the close of the testimony for both sides the court
instructed the jury to find for the plaintiff, and assess
as damages the fair market value of the property at
the time and place they were to be delivered, less $5
per hundred pounds—that being the amount of liability
assumed by the Rock Island road under its bill of lad-
ing, and which amounted to $17.50, and reads as fol-
lows:

        "CHICAGO, ROCK ISLAND & PACIFIC RY.
Chicago Station.                    October 10, 1906.

In consideration of the price (special rates on car-
loads, and First Class Rates on less quantities)   at
which the Chicago, Rock Island & Pacific Railway Com-
pany hereby agrees to transport a quantity of House-
hold goods, furniture, or emigrant movables (includ-
ing Live Stock, if any, in the car), from Chicago Sta-
tion to Los Angeles, Cal., Station, the same being con-
signed to Pacific Coast Freight Co., I, AMERICAN FOR-
WARDING & MERCANTILE Co., the Consignor, hereby
release the said Company and all other Railroads
and Transportation Companies, over whose line the

above property may pass to destination, from all liability from any loss or damage said property may sustain in excess of $5.00 per 100 lbs., and I hereby guarantee all charges for freight on connecting lines to destination.

THE AMERICAN FORWARDING & MERCANTILE COMPANY,
Consignor.

N. B.—When household goods, etc., are shipped at rate based on valuation of $5.00 per hundred pounds, agents will require the owner or consignor to sign this agreement, and when signed same must be kept on file at forwarding station. Agent must then note on way-bill, 'Released to valuation of $5.00 per hundred pounds.'

C. R. I. & P. 60486.''

Plaintiff contends that defendant was liable, 1st, because in its relation to the plaintiff it was a common carrier, and that its bill of lading is not a contract to forward the goods merely, but was a contract for their transportation and delivery at Los Angeles; 2nd, that, even if defendant's relation to plaintiff was merely that of agent, or forwarder, it had no authority to release the railway company from loss in excess of the $5 per hundred pounds weight of the box.

BYRON Y. CRAIG, for plaintiff in error.

CRATTY BROS. and JARVIS, for defendant in error.

MR. JUSTICE BALDWIN delivered the opinion of the court.

We have carefully considered the arguments of counsel and have examined the cases submitted, among which are Bare v. The American Forwarding Co., 146 Ill. App. 388, and the same as reported in 242 Ill. 298; also, the Interstate Commerce Commissions Decisions in Export Shipping Co. v. Wabash R. R. Co. et al., 14 I. C. C. Rep. 437, and California Commercial Ass'n v. Wells Fargo & Co., 14 I. C. C. Rep. 422.

The facts before this court in the Bare case were

very different from those in the case at bar, and may have warranted entirely different conclusions than can be reached in this case. In that case, the plaintiff in person took the goods to the freight depot of the railway company for shipment and there met one of the officers of the American Forwarding Company, who received the goods and issued a receipt therefor; and there is, also, testimony in the case (though denied by the defendant) to the effect that the officer of the forwarding company, thus receiving the goods, assured the plaintiff that the company would be responsible for the trunk if lost.

Upon the evidence in this case, and so far as this case is concerned, we regard the transaction by the defendant company as one in which it acted as a forwarding agent, and not as a common carrier.

The business of gathering from various small shippers their freight, and assembling it into carload lots, and thus enabling the forwarding company to secure the transportation of the various parcels of freight at carload rates—and, to secure this carload rate, waiving the protection which otherwise the shippers of less than carload rates would have—with the difference between the carload and less than carload rates distributed between the forwarding company and the shipper in such proportion as the forwarding company may find necessary to secure business, leaving to the railway company the burden of maintaining its equipment and expensive terminal·privileges for such amounts as it can earn upon the less than carload lots of freight which it is compelled to handle for individual shippers to such places, as are not important terminal points, involves considerations upon which much might be said upon both sides.

It is clear, however, that if the forwarding agent, to get this business, is to be allowed to release the railway company from all liability, except such as is comparatively nominal, for losses or damages incurred by reason of the shipment, it should be done only with the

assent of the shipper. Perhaps this should be in the form of a distinct notification to the shipper, at the time the goods are accepted, that, in order to secure the reduced rate obtained by shipping at carload rates, and of which reduced rate the shipper is a beneficiary, it is necessary that the shipment be "released and at owner's risk," but, in some manner, the shipper must be advised and assent.

In this case defendant in error (Minerva Blair), after packing the box, had a Mr. Stephens, a merchant of Peru, Indiana, call and mark it for shipment, and she authorized him to attend to the details of shipping it to California for her. The drayman for Stephens came and took it for that purpose, and turned it over to the Peru Teaming Company of Peru, Indiana, which billed it over to the Wabash Railroad Company to plaintiff in error in Chicago, and enclosed the bill of lading to plaintiff in error in a letter, stating "Herewith enclosed find bill of lading for one box H. H. Goods, to be forwarded to Long Beach, California. The box is plainly marked for consignee, Deo Hauk, with freight paid to Chicago." The bill of lading enclosed, acknowledges receipt in good order from Jesse Stephens by the Wabash Railroad Company, to be delivered to The American Forwarding & Mercantile Company of Chicago, Ill., one box H. H. Goods, weight 340 pounds, marked Deo Hauk, Long Beach, California. On this bill of lading there appeared, among other things, the following:

"The consignor of this property has the option of shipping same at a higher rate without limitation as to value in case of loss or damage, but agrees to the specified valuation named in case of loss or damage in consideration of the lower rate accorded for transportation.

Jesse Stephens, Consignor.

subject to all the terms and conditions of the bill of lading now in use by the Wabash Railroad Company."

Also the following:

"Released at owner's risk."

There was, also, evidence in this case to the effect that it was the custom of forwarders to ship at the reduced rate, and to waive liability, as plaintiff in error did in this case.

We think the evidence in this case justified the act of the plaintiff in error in shipping the box at the reduced rate and in waiving liability on the part of the railroad company.

Jesse Stephens was the agent of defendant in error to attend to the shipment. He delegated the work to the Peru Teaming Company, which did ship to Chicago at the reduced rate, and waived liability, and the only instructions which the plaintiff in error had consisted of the letter and bill of lading it received from the Peru Teaming Co.—showing the goods were "to be forwarded," and that the freight was "paid to Chicago." Plaintiff in error, as sub-agent for defendant in error, in shipping at the reduced rate, did what her agent had already done within the scope of instructions, and, therefore, it was not liable.

The judgment of the court below is reversed, with a finding of facts.

*Reversed.*

Mr. Justice Smith dissents.