[No. 10698.   Department Two.   October 30, 1912.]

# J. B. KETTENHOFEN *et al., Respondents,* v. GLOBE TRANSFER & STORAGE COMPANY, *Appellant.*[1]

CARRIERS—OF GOODS—WHO ARE—CONTRACT—CONSTRUCTION. The defendant, a forwarder of goods, is a common carrier, and liable as such for loss of goods by fire, and not merely as a warehouseman, where it orally contracted for a through shipment from plaintiff's residence in a car of its own procurement and under its own control at a fixed rate, which was less than the railroad's rate for car load lots and more than the rate on less than car load lots, the custom of the defendant being to assemble goods in a warehouse for its own convenience without storage charges, until car load lots could be forwarded to its own agent, who paid the railroad freight and attended to the receipt and distribution of the goods; and it is immaterial that it did not own any railroad line.

SAME—LOSS OF GOODS BY FIRE—STORAGE BY CARRIER—LIABILITY. A common carrier is liable as such for the loss of goods destroyed by fire in its warehouse, where the goods were delivered for transportation and not for storage, the storage being for its own convenience.

SAME—VALUE OF GOODS—EVIDENCE—SUFFICIENCY. A finding that household goods destroyed by fire in a warehouse were of the value of $700, is sustained by evidence of the plaintiff that they were worth $1,000, that being the cost price paid from one to three years previously, from which the court arbitrarily deducted 30 per cent, where the defendant admitted they were worth $500, and offered no evidence as to the value.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 4, 1912, upon findings in favor of the plaintiffs, after a trial on the merits before the court, in an action for damages.   Affirmed.

*Totten & Rozema,* for appellant.

*Kerr & McCord,* for respondents.

ELLIS, J.—This is an action to recover the value of certain household goods and wearing apparel destroyed by fire while in the custody of the defendant, Globe Transfer & Storage

[1]Reported in 127 Pac. 295.

Company. The defendant was engaged in the business, among other things, of soliciting goods from different persons having less than a car load lot for shipment from Seattle to other points. Its custom was to receive such lots and hold them at its warehouse until a car load destined to a common point had been assembled. It then arranged with some railroad company for a car to that point, placed the goods in the car, each piece marked for identification as to ownership, billed the car to its agent, and turned the car over to the railroad company for transportation to the given point. The placing of such goods in the warehouse was not for storage, but for the defendant's own convenience in assembling the car load lots as incidental to the carriage of the goods. No storage charge was made. The defendant usually charged a freight rate for such shipments higher than the railroad company's car load rate and lower than its less than car load rate, the defendant's compensation being the difference between its own charge and the car load rate paid by it to the railroad company. The defendant's manager testified that its agent at the point of destination pays the freight and collects the freight plus the defendant's compensation, styled by him "our commission," unless it is paid in advance.

The plaintiffs delivered their goods to the defendant under an oral agreement for shipment from their residence in Seattle to Milwaukee, Wisconsin, the defendant having agreed to notify the plaintiffs as soon as it would be ready to load the car. On Saturday, January 28, 1911, the notification was given, and the defendant, in the afternoon of that day, sent its conveyances, transported the goods from the plaintiffs' residence to its warehouse, where they arrived at about six o'clock in the evening, too late for loading into the car. They were placed in the warehouse for weighing, sorting, listing, and storage, till they could be placed in the car. While in the warehouse the goods were destroyed by fire. There was no evidence that the plaintiffs had any knowledge of the details of the defendant's business or that the goods

would be stored in the warehouse at all. The cause was tried to the court without a jury. The court found the facts substantially as above condensed; also that the plaintiffs were damaged in the sum of $686, and that the reasonable value of the defendant's services in packing and carting the goods was the sum of $27.50. Judgment in favor of the plaintiffs was rendered for the difference of $658.50, and for costs. The defendant has appealed.

The appellant concedes that, if the goods when destroyed were in its possession as a common carrier, it is liable for their loss. It contends, however, that its possession was that of a forwarder or warehouseman, and not that of a common carrier. The duties and liabilities assumed by the appellant, in legal contemplation, must be determined by the nature of the contract of the parties. A thorough examination of the evidence leads to the sure conclusion that the contract was one for a through shipment from the residence of the respondents in the city of Seattle to the city of Milwaukee. The means to that end were left entirely to the appellant's selection and control. The goods were delivered with no other direction expressed or implied. Neither the service on the one hand nor the compensation on the other was segregated, itemized, or separately considered. It was a contract for a through shipment at a rate to be fixed by the appellant. The goods were not delivered for mere forwarding to the railroad company, nor for storage in a warehouse; they were delivered for shipment by whatever route the appellant might find most to its advantage, and in a car of its own procuring. In this branch of its business the appellant was exercising the employment of receiving, carrying, and delivering goods, wares, and merchandise as an occupation, and for all people indifferently. By its contract it assumed the entire control of the goods, severing the respondents' connection therewith until delivery at the place of destination. Such was the ordinary course of its business, and such was the plain purport of the contract. It was a contract for carriage and delivery

for hire, pure and simple; and in so contracting, the appellant assumed the attributes, and took on the relation of, a common carrier for hire, with all of the duties and liabilities incident to that relation. It can make no manner of difference that in other branches of its business it may have been a mere forwarder or warehouseman, or that it so styled itself. Its character, as concerns the business here involved, must be determined by the nature of the service it contracted to perform, without regard to the name by which it has chosen to designate its general business. *Bare v. American Forwarding Co.*, 146 Ill. App. 388; *Mercantile Mut. Ins. Co. v. Chase*, 1 E. D. Smith (N. Y.) 115; *Lee v. Fidelity Storage and Transfer Co.*, 51 Wash. 208, 98 Pac. 658; *Garberson v. Trans-Continental Freight Co.*, 51 Wash. 213, 98 Pac. 612.

"The law, regardless of forms or names, will look at the real transaction, and if the contract be in fact one for transportation and delivery of the goods to a consignee, no matter through what agencies it is to be effected, the undertaking will be construed as that of a common carrier." Hutchinson, Carriers (3d ed.), § 83.

The appellant lays much stress upon the fact that it did not own a line of railway nor control the entire means of transportation. This is not material. It is sufficient that, in the ordinary course of its business, it made a contract by which it agreed to transport and deliver the goods. *Cownie Glove Co. v. Merchants' Dispatch Transp. Co.*, 130 Iowa 327, 106 N. W. 749, 114 Am. St. 419, 4 L. R. A. (N. S.) 1060; *Buckland v. Adams Express Co.*, 97 Mass. 124, 93 Am. Dec. 68; Hutchinson, Carriers (3d ed.), §§ 83, 84.

Nor is it material that the goods were destroyed while in the appellant's warehouse. They were delivered for transportation, not for storage. The storage was at the appellant's instance and for its own convenience.

"But where warehousemen, wharfingers, or forwarders of freight combine the two characters, treating the deposit with them as being merely for the convenience of further carriage or to encourage or promote their business as common car-

riers, they will be held to a strict liability as such from the time of the delivery to them. In such cases the deposit is a mere accessory to the carriage, and for the purpose of facilitating it, and the liability as carrier begins with the receipt of the goods." Hutchinson, Carriers (3d ed.), § 71. See, also, *St. Louis, I. M. & S. R. Co. v. Murphy*, 60 Ark. 333, 30 S. W. 419, 46 Am. St. 202; *Wehmann v. Minneapolis, St. P. & S. S. M. R. Co.*, 58 Minn. 22, 59 N. W. 546.

The reasoning of the court in the Illinois case of *Bare v. American Forwarding Co.*, *supra*, seems to us unanswerable. The appellant claims that the later case of *Blair v. American Forwarding Co.*, 159 Ill. App. 511, decided by the same court, counteracts the former decision, but we think not. It does not purport to overrule the former decision, but merely to distinguish the two cases on the facts. In any event, the earlier decision, as it seems to us, is the more logical and convincing. Nor are we impressed by the interstate commerce decisions—*California Commercial Ass'n v. Wells, Fargo & Co.*, 14 I. C. C. 422, and *Export Shipping Co. v. Wabash R. Co.*, 14 I. C. C. 437, cited by the appellant. So far as applicable to the facts here, they seem to us unsound. On both reason and what we conceive to be the more logical authorities, we hold that, under the circumstances here shown, the appellant assumed the duties and liabilities of a common carrier.

The appellant also contends that there was not sufficient evidence of the value of the goods destroyed. The respondents testified that they were of the value of $1,000. No evidence was offered to the contrary. It appeared, however, that this value as to most of the items was the same as the cost price, paid from one to three years previously. The court, therefore, found a value of thirty per cent less than that testified to. The evidence as to value was not satisfactory, and the court's reduction was arbitrary; but in view of the fact that the appellant in its answer admitted that

the goods at the time of their destruction were worth $500, and that it offered no evidence as to value, we would not be warranted in disturbing the court's finding.

The judgment is affirmed.

MOUNT, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.