[Civ. No. 7530. First Appellate District, Division Two.—April 22, 1931.]

EILEEN YORKE, Respondent, v. PICKWICK STAGES SYSTEM (a Corporation), Appellant.

Libby & Sherwin for Appellant.

Thomas C. Ryan for Respondent.

SPENCE, J.—This is an appeal by defendant Pickwick Stages System, a corporation, from a judgment in favor of plaintiff in an action to recover the value of two trunks.

The evidence shows that plaintiff purchased a ticket from defendant's agent in Vancouver, British Columbia, for transportation as a passenger over various autostage companies' lines from Vancouver to San Francisco. A portion of the trip in the state of California was over the line of defendant Pickwick Stages System. Upon purchasing her ticket a few days prior to departure, plaintiff discussed with defendant's agent the subject of transportation of her trunks. It appears that the stage companies carry baggage, including trunks, when accommodations will permit, but reserve the right to reject any baggage over 60 pounds in weight and charge excess on any baggage over 150 pounds in weight. Because of anticipated inconvenience at the international boundary or some other reason, plaintiff did not ask to have these trunks transported as baggage by autostage, but discussed sending them either by express or by steamship. During the discussion defendant's agent communicated with the Pacific Steamship Company which operated vessels including the passenger ship "Ruth Alexander" and the freighter "Boobyalla". The agent also communicated with the Vancouver Transfer Company and advised plaintiff of the approximate total cost of such transportation, including the transfer company's charges and the steamship company's charges. There is a conflict in the testimony regarding part of the conversation. Plaintiff testified that defendant's agent, after having communicated with the steamship company, stated that the trunks would be transported on the "Ruth Alexander". The agent testified that no particular vessel was mentioned in the conversation. Plaintiff decided to send the trunks by steamship and defendant's agent made arrangements to have the transfer company call for plaintiff's trunks for the purpose of conveying them to the steamship company. Plaintiff delivered her trunks to the transfer company whose representative prepaid the charges and obtained a bill of lading from the Pacific Steamship

Company in which the transfer company was named as the shipper and plaintiff was named as the consignee. This bill of lading, with a statement thereon of the total charges of $5.45, including those of the transfer company and the steamship company, was delivered to defendant's agent, who in turn delivered it to plaintiff prior to her departure from Vancouver. Plaintiff accepted the bill of lading and paid the $5.45 to defendant's agent, who turned over this entire sum to the transfer company. The bill of lading of the Pacific Steamship Company made no mention of any particular vessel. The trunks were transported by the steamship company on the freighter "Boobyalla", which vessel burned at sea and the trunks were lost or destroyed.

It was plaintiff's theory that defendant Pickwick Stages System, a corporation, was liable as a common carrier for the full value of the lost trunks because of the deviation from the alleged contract on the part of said defendant to transport the trunks on the "Ruth Alexander".

Appellant urges several grounds for reversal, the main contention being that the evidence is insufficient to support the findings and the judgment. In our opinion this contention must be sustained. ■ Assuming, without deciding, that the evidence was sufficient to show that appellant was a common carrier of passengers and baggage between the points mentioned and that their agent had authority to enter into contracts on behalf of appellant for the transportation of baggage by means other than autostages (all of which was denied by appellant), we believe that the evidence is insufficient to show that appellant entered into any contract for the transportation of respondent's trunks. The most that can be said is that appellant, through its agent, assisted in arranging for a contract with another carrier, to wit, the Pacific Steamship Company. ■ The contract with the steamship company, evidenced by the bill of lading designating respondent as consignee, was delivered to respondent prior to her departure and was accepted by respondent without objection. If she had any objection to a contract with the steamship company or to the particular contract which failed to designate the vessel upon which the trunks were to be shipped, such objection should have been made at that time; otherwise the bill of lading delivered and accepted by respondent is presumed to con-

stitute the contract of carriage and respondent is conclusively presumed to have read it and acquiesced in its terms. (10 C. J. 194.) It was not until respondent learned of the loss after her arrival in San Francisco that she claimed that the contract for transporting the trunks was with appellant rather than with the steamship company as appears from the bill of lading.

The findings that the "trunks were then and there delivered to the defendant" and that it agreed to "safely ship and deliver" the trunks are wholly without support in the evidence. The trunks were never delivered into the custody and control of the appellant and no bill of lading, baggage check or other evidence of a contract with the appellant company relating to the transportation of the trunks was ever issued to respondent. This distinguishes the present case from *Franklin* v. *Southern Pac. Co.*, 203 Cal. 680 [59 A. L. R. 118, 265 Pac. 936], *Kettenhofer* v. *Globe Transfer & Storage Co.*, 70 Wash, 645 [Ann. Cas. 1914B, 776, 42 L. R. A. (N. S.) 902, 127 Pac. 295]; *Moffat* v. *Long Island R. Co.*, 123 App. Div. 719 [107 N. Y. Supp. 1113], and other authorities cited by respondent. In our opinion there was no evidence to sustain the finding that there was any contract with appellant, express or implied, by which appellant could be charged with the liability of a common carrier for the loss of the trunks while they were being transported under the contract with the steamship company.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.