Joseph W. Bare et al., Defendants in Error, v. The American Forwarding Company, Plaintiff in Error.

Gen. No. 14,293.

1. COMMON CARRIERS—*when forwarding companies are.* Forwarding companies which undertake for hire to transport baggage from its starting point to its final destination, such transaction being within the ordinary course of their business, are common carriers within the meaning of the law.

2. COMMON CARRIERS—*extent of obligation of forwarder.* Where a forwarder or wharfinger only delivers goods to a carrier for transportation to a particular point, there to be delivered by the carrier to the consignee named by the shipper, with the delivery to the carrier the duty of the forwarder or wharfinger is ended.

Action on contract. Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed January 26, 1909.

Statement by the Court. This writ of error brings before us for review a judgment of the Municipal

Court for $393.23 recovered by defendants in error in an action of the fourth class against plaintiff in error for the loss of a trunk and its contents, consisting of wearing apparel and household goods.  October 2, 1906, the plaintiffs delivered the trunk to the defendant at Englewood for shipment to Los Angeles, California, and the defendant issued to the plaintiffs the following receipt therefor:

"Order No._____Date Oct. 2, 1906.
M.    JOSEPH W. BARE,
Ship to Los Angeles, California,
At  _____
How  ship_____:_____When_____
Terms—Send Bill of Lading General Delivery.
One Trunk
    Weight 175 lbs.
      Rate, $1.75.
        THE AMERICAN FORWARDING & MERCANTILE CO.,
                              Per J. W. R."

The defendant sent the trunk to its warehouse in Chicago where it, with other similar goods, belonging to different persons, were placed by the defendant in a car of the Rock Island Railroad Company which had been chartered by the defendant to go from Chicago to Los Angeles.  October 10, the car was delivered to the Rock Island Company consigned to an agent of the defendant at Los Angeles.

The defendant, in writing, released the railroad company from liability for loss or damage to the goods in the car in excess of $5.00 per 100 pounds.

In transit the car and its contents were destroyed by fire, without the fault of the defendant.

The business of the defendant for some years prior to the time of the shipment of said trunk was conducted as follows:  The defendant had, in Chicago an office and a warehouse.  It solicited shipments of goods of persons having less than a car-load of goods for shipment from Chicago to points in this and other countries, and received and held such goods at its

warehouse until a car-load was assembled, destined to one point. It then arranged with a railroad company for a car to that point, placed said goods in the car, each parcel marked with the name of its owner, consigned the car to an agent of the defendant, and turned the car over to the railroad company which hauled the car to the place of destination.

It had regular or fixed rates for such shipments which were greater than the railroad company's car-load rate and less than its less than car-load rate. The compensation of the defendant was the difference between the rate it charged its shippers and the car-load rate it paid the railroad company.

The defendant furnished its agent at the point of destination a list showing the contents of the car, the mark on each parcel, charges, etc., so that he could check out the goods and make delivery thereof. The agent of defendant collected on delivery defendant's charge for the carriage of each parcel, unless such charges had been prepaid, and also paid the railroad company its charges for the car-load. The railroad company's rate on household goods to the Pacific Coast was $1.12 per hundred for a minimum of 20,000 pounds; its less than car-load rate $2.30 per hundred, and defendant's rate $1.75 per hundred. The defendant had no special contract or arrangement with the railroad companies and was treated by the companies the same as other shippers in car-load lots and charged the same rate.

A. L. GETTYS and F. V. CAMPE, for defendant in error.

BYRON C. THORPE, for plaintiff in error; BRYAN Y. CRAIG, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

The learned judge of the Municipal Court held the defendant liable to the plaintiffs as a common carrier

of said trunk and its contents, and the question whether such holding was proper under the facts and circumstances proven, is the only question presented for our decision.

The nature of the business carried on by the defendant, and of the legal duties and obligations which such business imposes on the defendant, is to be ascertained from a consideration of the kind of service it undertook to render to plaintiffs and the service which it holds itself out to the public as ready to render to those who may have occasion to employ it. The defendant agreed with the plaintiffs to transport this trunk from Englewood to Los Angeles and there deliver it to the plaintiffs. The transaction was in the usual course of the business in which the defendant was engaged. It solicited goods for shipment to the Pacific Coast and other parts of the country in less than car-load lots; had a regular rate for the transportation of such goods; carried for all persons alike; maintained a general office for the transaction of its business and a warehouse in which it assembled goods received for shipment until it had a car load destined to one point, when it chartered a car to that point, loaded the car with the goods it had undertaken to carry, consigned the car to its own agent at the point of destination and delivered the car to the railroad company. The defendant paid the railroad company the car-load rate to the Pacific Coast, $1.12 a hundred, and charged its shippers $1.75 a hundred. The undertaking of the defendant to deliver to the plaintiffs at Los Angeles the trunk it received from them at Englewood involved the transportation of the trunk and was an undertaking to carry for hire. The contract of the parties made the defendant a carrier of the trunk for hire. The transaction was in the ordinary course of the business in which defendant was engaged. The defendant held itself out as ready to carry for every one and was therefore a common carrier.

The contention of plaintiff in error that it was a

forwarder and not a common carrier cannot be sustained. A forwarder, or wharfinger, only delivers goods to a carrier for transportation to a particular point, there to be delivered by the carrier to the consignee named by the shipper. With the delivery to the carrier the duty of the forwarder or wharfinger is ended. Here the defendant received the trunk from the plaintiffs at Englewood, undertook to transport it to Los Angeles and there, through its agent, deliver it to the plaintiffs.

In Buckland v. Adams Ex. Co., 97 Mass. 124, it was contended that the rules of the common law are not applicable to a contract of carriage by which it is understood between the parties that the service is to be performed, in part at least, by means of an agency over which the carrier can exercise no control, and it was said by Bigelow, C. J., p. 130: "But this argument, though specious, is unsound. Its fallacy consists in the assumption that at common law, in the absence of any express stipulation, the contract with an owner or consignor of goods delivered to a carrier for transportation necessarily implies that they are to be carried by the party with whom the contract is made, or by servants or agents under his immediate direction and control. But such is not the undertaking of the carrier. The essence of the contract is that the goods are to be carried to their destination, unless the fulfilment of this undertaking is prevented by the act of God or the public enemy. This, indeed, is the whole contract, whether the goods are carried by land or water, by the carrier himself or by agents employed by him. The contract does not imply a personal trust, which can be executed only by the contracting party himself or under his supervision by agents and means of transportation directly and absolutely within his control. Long before the discovery of steam power, a carrier who undertook to convey merchandise from one point to another was authorized to perform the service through agents, exercising an independent em-

ployment, which they carried on by the use of their own vehicles and under the exclusive care of their own servants. It certainly never was supposed that a person who agreed to carry goods from one place to another by means of wagons or stages could escape liability for the safe carriage of the property over any part of the designated route by showing that a loss happened at a time when the goods were placed by him in vehicles which he did not own, or which were under the charge of agents whom he did not select or control. The truth is that the particular mode or agency by which the service is to be performed does not enter into the contract of the carriage with the owner or consignor. The liability of the carrier at common law continued during the transportation over the entire route or distance over which he had agreed to carry the property entrusted to him.''

The rule that express companies are common carriers does not depend on the fact that such companies have messengers to take charge of the freight. Dispatch companies which have no such messengers are also common carriers. Both use railroad cars in the performance of their respective contracts with their respective customers, and they have the same relation to the railroad companies whose cars they so use.

We are unable to perceive any difference between the relations of such companies to the railroad companies whose cars they use and the relations of the defendant to the railroad companies whose cars it uses in the performance of such contracts as the one it entered into with the plaintiffs, or any ground on which it can be held that such companies are liable as common carriers and the defendant not.

The judgment will be affirmed.

*Affirmed.*