## Cincinnati, New Orleans & Texas Pacific R. R. Co. v. Steele.

(Decided October 16, 1910.)

### Appeal from Jessamine Circuit Court.

1. Carriers—Control of Destination by Shipper.—The right of control by the shipper of the destination of his goods upon the carriers line, is an incident of his title.

2. Same—Carriers Title—Subordinate to Shipper.—The carriers title is subordinate to that of the owner and aside from his lien

for carrying charges, cannot be allowed to defeat the owners right to control their destination. He has the same right to stop them during the trip as to start them on the trip.

3. Stoppage in Transitu—Rights of Parties.—The right of stoppage in transitu is the rule of law respecting the shipment of goods to an insolvent or failing consignee other·than the shipper. Even in the latter case the carrier upon seasonable notice must stop the goods though he would be entitled to his contract compensation for hauling them.

4. Failure_to Deliver Message—Liability of Carrier.—If the carrier negligently fails to deliver a message to its agent to stop the goods which are in its possession, it will be liable to the owner, or if the carrier agrees to use all available means to stop the goods before their delivery it is liable in case of negligent failure to do so.

5. Directions of Shipper.—The directions of the owner-shipper must be respected where the rights of the consignee do not intervene, the carrier being allowed its toll before parting with the goods.

JOHN GALVIN and N. L. BRONAUGH for appellants.

JOHN H. WELCH for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

On March 3, 1909, appellee shipped a carload of wheat from Nealton, in Jessamine county, billed to his own order, to be delivered at Asheville, N. C. The affreightment was by the Louisville & Atlantic R. R. Co., on its own behalf and that of the connecting carriers, C., N. O. & T. P. Ry. Co., and the Southern Railway Co. The L. & A. R. R. Co., was to carry the wheat to Nicholasville, Ky., where it was delivered to appellant, C., N. O. & T. P. Ry. Co., which was to carry it to Harriman Junction, Tenn., where it was delivered to the Southern Ry. Co., and by it carried to Asheville.

On March 4th, or at latest on the morning of March 5, 1909, appellee requested of the carriers L. & A R. R. Co., and C., N. O. & T. P. Ry. Co., that the destination of the wheat be changed to Dayton, Tenn. The agents of both these companies assented to the request, and the original bill of lading was taken up and a new bill of lading issued in its place, routing the wheat to Dayton, Tenn The car had in the meantime been delivered to the C., N. O. & T. P. Ry. Co., and was then on its way to Harriman. The latter company's agent at Nicholasville agreed to telegraph orders to have the car stopped at Harriman Junction, and sent thence to Dayton as directed in the new bill of lading. He telegraphed the

agent of the company at Harriman Junction, but did
not send the telegram until about ten o'clock at night of
March 5th, and for some reason unexplained the tele-
gram did not reach the Harriman agent until about noon
the next day. He responded that the car had not arrived,
but that he would stop it and change its route when it
came in. As a matter of fact it had arrived probably an
hour or so before, but owing to an omission of one of
appellant's clerks at Harriman in entering the fact in
its appropriate place on a book kept by appellant show-
ing the arrival of cars, he made the mistake mentioned.
Within an hour or so he discovered his mistake and noti-
fied the agent at Nicholasville that the car had come in
and had been delivered to the Southern Railway Com-
pany before the receipt of his first message. The South-
ern and the C., N. O. & T. P. Companies use the
same freight yard at Harriman. But appellant's agent
did not make any effort to learn after he had discovered
his mistake whether the car had gone out, or to stop it.
The car was carried on to Asheville, and being un-
claimed, it was on appellee's order brought back to Har-
riman and carried on to Dayton, for which extra service
appellee was charged and compelled to pay an additional
freight toll, $291.11. Appellee brought this suit to re-
cover the difference in freight charge.

The court instructed the jury that they should find
for the defendant railway company if they believed from
the evidence that the latter had agreed with appellant to
only use its best endeavor to change the destination of
the car, and if it used reasonable effort to do so, other-
wise to find for the plaintiff.

We think the instructions were correct. It was com-
petent for the shipper and carriers to agree to a change
of the original contract, especially as the carrier was to
receive as consideration for so doing the additional toll
for carrying the wheat on to Dayton. Whether they so
agreed was best shown by the bill of lading sued on.
But the court allowed evidence to the effect to contra-
dict the bill of lading, which was in its terms a positive
agreement to haul and deliver the wheat to Dayton, to a
conditional agreement, which was that the carrier would
endeavor to make the change requested. This was as
liberal as the appellant was entitled to.

The title to the wheat remained in the shipper. He
was also the consignee, it will be remembered. He there-
fore had the right to alter the destination of the car, so

long as it was in that carrier's custody. Mo. Pac. R. Co. v. Lau, 57 Neb. 559, 78 N. W. 291. That the carrier had issued a bill of lading to the consignor-consignee did not change the right of the latter to control the destination, as the presumption was that he remained the owner of the goods and bill of lading. Dickson v. Chaffe, 34 La. Ann. 1133. The right of control by the shipper of the destination of his goods upon the carrier's line is an incident of his title. The carrier's title is subordinate to that of the owner, and aside from his lien for charges for carrying the goods, cannot be allowed to defeat the owner's right to control their destination. He has the same right to stop them during the trip, as to start them on the trip. The right of stoppage in transitu is a different matter, and is the rule of law respecting the shipment of goods to an insolvent or failing consignee, other than the shipper. Even in the latter case, the carrier upon seasonable notice must stop the goods, though of course he would be entitled to his contract compensation for hauling them. Hause v. Judson, 4 Dana, 7, 29 Am. Dec. 377. But if the carrier negligently fail to deliver a message to its agent to stop the goods which are in its possession, it will be liable to the owner. Willock v. Mo. P. R. Co. 79 Mo. 76. Or if the carrier agrees to use all available means to stop the goods before their delivery it is liable in case of negligent failure to do so. Ryer v. Pennsylvania Co., 25 Misc. (N. Y.), 289, 54 N. Y. Suppl. 583. The directions of the owner-shipper must be respected where the rights of a consignee do not intervene, the carrier of course being allowed to receive its toll before parting with the goods. Sutherland v. Peoria Second National Bank, 78 Ky. 250; Hartwell v. Louisville, et al., Ry. Co., 15 Rep. 778.

The jury evidently found in this case that the carrier, C., N. O. & T. P. Ry. Co. had reasonable opportunity to stop the car of wheat before parting with its possession at Harriman, and that it was negligent in not having done so within the twenty-six hours or more after receiving notice and after having agreed to do so, until it was turned over to the Southern Railway Company. This finding of fact is well sustained by the evidence.

Judgment affirmed.