Sarah Ingram, Defendant in Error, v. The American Forwarding Company, Plaintiff in Error.

Gen. No. 15,573.

Common carriers—*who liable as.* An alleged forwarding agent who receives goods for transit, issues bills of lading, makes contracts in its own name with a railroad company for carriage, is, as to a person with whom it contracts for the delivery of goods, a common carrier and liable as such.

Error to the Municipal Court of Chicago; the Hon. WILLIAM W. MAXWELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed June 16, 1911. Rehearing denied June 27, 1911.

FELIX J. STREYCKMANS and BRYAN J. CRAIG, for plaintiff in error.

BULKLEY, GRAY & MORE, for defendant in error; C. PAUL TALLMADGE, of counsel.

MR. JUSTICE CLARK delivered the opinion of the court.

This suit brings up for review proceedings in the Municipal Court of Chicago, which terminated in a judgment against the plaintiff in error for the value of a consignment of household goods shipped to Los Angeles, Cal. The relations between the parties are partly set forth in what is denominated an "inland bill of lading," and which reads as follows:

"Inland Form I
                    INLAND BILL OF LADING
                         No. 9405.
The American Forwarding and Mercantile Company.
    General Office: Security Bldg., Cor.
      Madison St. and 5th Ave., Chicago, Ill.
Fordwarders, Distributors, Domestic and Foreign Freight
                       Contractors.
                                        Oct. 4, 1906.
Apply for delivery to Pacific Coast Frt. Co., Los Angeles,
    Calif.

    READ THE MUTUAL CONDITIONS OF THIS CONTRACT.

    Received, in apparent good condition by The American Forwarding and Mercantile Company, except as otherwise noted herein, for account of Miss Florence Ingram, of Battle Creek, Mich., the property described herein to be forwarded

to Mrs. Sarah Ingram, Los Angeles, Calif., subject, however, to the following conditions, agreements and stipulations:

1. The American Forwarding Company, hereinafter designated as the Company, and ................. hereafter designated as the Shipper, agree that the said Company is hereby constituted the agent of the said Shipper for the purpose of forwarding the goods described herein to the distination given above.

2. The Company agrees to forward the goods herein mentioned to............or some other distributing point as soon as a car load has been accumulated, and is not to be held liable for any loss or damage arising from the detention of the goods for that purpose, nor for the neglect or refusal of any carrier to receive and forward the same.

3. It is expressly agreed and understood that in case of loss or damage to said property while not in the actual possession of said Company no action, suit or proceeding shall be instituted by said Shipper against said Company, but said Shipper shall proceed to collect the damages from the Carrier, Insurance Company, or other person at fault.

4. It is understood and agreed that the transit insurance covers only damages arising from fire, derailments of cars and collisions, any damage arising from other causes while the goods are in possession of the Company, Carriers or other Persons shall be settled on the basis of $5.00 per cwt. of goods so damaged.

5. The Company shall in no event be liable for loss by fire, floods, insurrections, riots, acts of God, civil or military authority or strikes, but only for damages as may arise from fraud or neglect of its servants, and then only when claim is presented within fifteen days from the arrival of the goods at their final destination.

And finally, in accepting this Bill of Lading, the Shipper, Owner and Consignee of the goods, or holder of this Bill of Lading agree to be bound by all of its stipulations, exceptions and conditions, whether written or printed herein, as fully as if they were all signed by such Shipper, Owner, Consignee or Holder.

DESCRIPTION OF ARTICLES.

No. 1 Box H. H. Goods.

This receipt is issued in exchange for a Bill of Lading of the G. T. Ry. Co., issued at B. Creek, the . . . . . . . . . . . . day of 9–29, 1906.

This Company does not assume any responsibility for loss or damage before goods come into its actual possession, nor after they have been delivered to the Railroad or other carrier transporting the goods to their destination, nor for loss by fire while in its actual possession.

Loaded in Car No. . . . . . . . . . . . . Date. . . . . . . . . . . .
Car No. . . . . . . . . . . . .
Weight 370 pounds. Rate from Chicago, Ill., to Los Angeles, per cwt. $1.75, $6.48 (subject to correction.)
Other charges, viz. . . . . . . . . . . . .
Total to collect for our account. . . . . . . . . . .
Marks: Mrs. Sarah Ingram No. inclusive.
From Miss Florence. Ingram. Consigned to Mrs. Sarah Ingram of Los Angeles, Calif., 471 E. 4th St., c/o Mrs. Geo. Melrose.
Place of origin, Battle Creek, Mich.
Remarks . . . . . . . . . . . . . . . . . . . .
The American Forwarding and Mercantile Company,
Per T. S. King."

The shipment originated, as indicated in the foregoing "inland bill of lading," at Battle Creek, Mich. The consignment there was made by Miss Florence Ingram, and the freight thereon prepaid to Chicago. The box was then delivered to the plaintiff in error, which issued the foregoing "inland bill of lading." The freight was never delivered to the defendant in error, having, it would seem, been destroyed by fire. The business was solicited by Wingate and Bond, who, the evidence discloses, received a commission from the plaintiff in error on all business that they secured for it.

The decision of the case turns upon the question as to whether or not the American Forwarding Company in this transaction is liable as a common carrier or merely as a forwarding agent. At the outset it should be stated that in the

case of Bare et al. v. American Forwarding Company, 146
Ill. App. 388, it was held to be, under somewhat similar cir-
cumstances, liable as a common carrier. This case was af-
firmed in the Supreme Court (242 Ill. 298), the latter court,
however, basing its decision upon the proposition that
whether or not the forwarding company was a common car-
rier was a question of fact, and that therefore the Supreme
Court was concluded by the judgment of this court.

Our attention has been called by plaintiff in erorr to a
decision of the Interstate Commerce Commission, Export
Shipping Co. v. Wabash Ry., 14 I. C. C. Rep. 437, in which
it was held that the Export Shipping Company, a concern
doing business on somewhat the same basis as the plaintiff
in error, was not a common carrier. In that case the ques-
tion was whether a forwarder may assemble a quantity of
freight owned by sundry persons for whom the forwarding
company is acting, and ship the same in its own name as
consignor in a carload lot, thus obtaining for its patrons
the benefit of a lesser rate, uniformly given where goods
are shipped in carload lots. The Commission held, two of
its members dissenting, that railroad companies under such
circumstances could be compelled to carry at the reduced
rate.

In the present case it appears that the rate upon the freight
in question, if shipped as an individual consignment, would
have been $2.20 per 100 pounds, while the rate upon the
property as shipped in a carload lot was $1.12. By refer-
ence to the foregoing "inland bill of lading" it will be seen
that the rate charged the defendant in error was $1.75 per
100 pounds, so that the forwarding company received for
services which it performed 63 cents per 100 pounds, over
the amount paid the railroad companies.

Our attention is also called by plaintiff in error in its
brief to the definition given in Bouvier's Law Dictionary
of what constitutes a forwarding agent:

"A forwarding agent is one who receives and forwards
goods, taking upon himself the expenses of transportation,

for which he receives a compensation from the owners, but who has no concern as an owner in the vessel, car or other conveyance by which the goods are transported and no interest in the freight. Such a one is not deemed a common carrier, but a mere warehouseman or agent. He is required to use only ordinary diligence in sending the property by responsible carriers. When he has placed the goods in course of transportation by proper conveyance his duties are at an end. He is not an insurer of the safe carriage of the goods."

The scheme of the plaintiff in error, like that of other forwarders, is apparently to circumvent the Interstate Commerce Law by obtaining indirectly for a shipper a rate less than the published rate. If the plaintiff in error had, in pursuance of the duty usually placed upon a mere forwarder, delivered the freight to the carrier, to be carried as a single shipment, it would have been obliged to pay the $2.20 per 100 pounds rate instead of the rate of $1.12. It did not do that. It issued what it is pleased to call an "inland bill of lading." Now a bill of lading is defined as follows:

"A written acknowledgment of the receipt of certain goods and an agreement for a consideration *to transport and deliver* the same at a specified place to a person therein named or his order."

"A memorandum or acknowledgment in writing, signed by the agent of a *common carrier* that it has received in good order, at the place therein mentioned, certain goods therein specified, which it promises *to deliver* in like good order * * * at the place therein appointed for the delivery of the same, to the consignee therein named, or to his assigns, he or they paying freight for the same."

"It is considered to partake of the character of a written contract, and also of that of a receipt. In so far as it admits the character, quality or condition of the goods at the time they were received by the carrier, it is a mere receipt, and the carrier may explain or contradict it by parol; *but as respects the agreement to carry and deliver,* it is a contract, and must be construed according to its terms." Bouvier's Law Dict.

VOL. CLXII.—31.

Throughout the brief and argument of plaintiff in error, the contract between the parties is constantly referred to as "defendant's bill of lading," indicating that in the opinion of its attorney at least, it exercised some of the functions of a common carrier, although the statement is made and reiterated that it is not a common carrier but merely a forwarding agent.

If the plaintiff in error was acting as a mere forwarder, why was it necessary for it to incorporate in its so-called "inland bill of lading" such provisions as, "It is understood and agreed that the transit insurance covers only damages arising from fire, derailments of cars and collisions, any damages arising from other causes while the goods are in possession of the Company, Carriers or other Persons shall be settled on the basis of $5.00 per cwt. of goods so damaged;" and the provision in paragraph 5, providing among other things that a claim for damages must be presented "within fifteen days from the arrival of the goods at their final destination." And, if plaintiff in error is a mere forwarder, why should it make a rate of transportation from Chicago to Los Angeles of "per cwt. $1.75"?

It would seem clear that defendant in error, having lost her property, should be entitled to payment for the same at some amount, either from the plaintiff in error or from the railroad company. If suit had been brought against the railroad company, it would necessarily have to be based upon a contract between the railroad company and defendant in error, under and by which the railroad company undertook to convey for the defendant in error household goods weighing 370 pounds. Did the defendant in error, or the forwarding company in her behalf, in the present case, make any such contract with the railroad company? We think not. In the first place, the railroad company was paid at the rate of $1.12 per 100 pounds. The published tariff rate for a shipment of this kind was $2.20 per 100 pounds in less than carload lots. If a contract had been made by the forwarding company in behalf of Mrs. Ingram with the railroad company to carry the goods at $1.12 per hundred,

the officer or agent acting in behalf of the carrier would have been liable to a criminal prosecution under the statute. If such a contract had been made by the defendant in error herself direct with the railroad company, she would have rendered herself personally liable to a criminal prosecution.

We have examined the case of Export Shipping Company v. Wabash Ry. Co., *supra,* and are persuaded that in the dissenting opinion of the Chairman of the Interstate Commerce Commission, Mr. Knapp, the better reasoning is presented.

In making its contract with the railroad companies for a carload shipment, the plaintiff in error necessarily exercised dominion and control over the divers shipments made in the car, from the time that it received such shipments to the time that it delivered the same to the various owners at Los Angeles, through its distributing agent. This distribution, it seems, was to have been made by the Pacific Coast Freight Company. There is some evidence in the record that nothing was paid by the forwarding company to the Pacific Coast Freight Company, but we do not regard that as material. The "inland bill of lading" contains the words, "Apply for delivery to Pacific Coast Frt. Co., Los Angeles, Calif." If the plaintiff in error had been acting as a mere forwarder, the goods naturally would have been consigned to Mrs. Ingram at Los Angeles, and would have been delivered to her by the carrier at that point, upon identification and upon payment of the charges. Instead of that, the "inland bill of lading" provided that she must apply to the company in Los Angeles, which, in this transaction at least, must be regarded as the agent of the forwarding company.

The contract in this case required the defendant in error to pay at the rate of $1.75 per 100 pounds for the transportation of the goods in question from Chicago to Los Angeles. It was not signed by the defendant in error. We think it shows conclusively that the plaintiff in error undertook for the amount stated to cause the box of goods in question to be transported from Chicago to Los Angeles; and it clearly appears from other evidence in the record

that the plaintiff in error paid to the railroads for the services performed by them the sum of $1.12 per 100 pounds. The record shows that after the so-called "inland bill of lading" was signed by the plaintiff in error it was sent to the daughter of the defendant in error at Battle Creek. By it the defendant in error was not advised as to what route the shipment would go; she could not have known from any information that was furnished her what railroad company or other carrier or persons she would have been obliged to sue in case of loss—if the theory of the plaintiff in error is to prevail. The record does show that on October 10th, six days after the issuance of the "inland bill of lading," the goods were destroyed by fire, on the C. R. I. & P. R'y near Joliet, Illinois.

As stated by Mr. Justice Baker in Bare v. American Forwarding Co., *supra*:

"The rule that express companies are common carriers does not depend on the fact that such companies have messengers to take charge of the freight. Dispatch companies which have no such messengers are also common carriers. Both use railroad cars in the performance of their respective contracts, and they have the same relation to the railroad companies whose cars they so use.

We are unable to perceive any difference between the relations of such companies to the railroad companies whose cars they use and the relations of the defendant to the railroad companies whose cars it uses in the performance of such contracts as the one it entered into with the plaintiffs, or any ground on which it can be held that such companies are liable as common carriers and the defendant not."

In the present case it is clear to us that it is immaterial under what name or style the plaintiff in error assumes to carry on its business; that it exercises the employment of receiving, carrying and delivering goods, wares and merchandise for hire, on behalf of all persons who may see fit to require its services; that in this capacity it took the property in question from the custody of the defendant in error,

assumed entire possession and control of it, made the contract with the railroad company in its own name, and agreed to cause the property to be delivered to the defendant in error at Los Angeles, through an agent at that point authorized to receive the property, this agent being the consignee named in the bill of lading issued by the railroad company to the plaintiff in error. It follows, therefore, in our opinion, that in this proceeding, the relation as between the parties must be held to be that of common carrier and shipper, and not that of forwarder and principal.

The record discloses the further fact that a receipt was issued by the Grand Trunk Railway System to the daughter of the defendant in error, on which the defendant in error is named as consignee; the destination is given as Los Angeles, and upon the receipt appear the words, "Notify care of The American Forwarding & Mercantile Company, at Chicago, State of Illinois." The receipt further shows that there was a prepayment of the charges to Chicago. It is clear from the record that no contract was made or intended to be made with the Grand Trunk Railway System by which it agreed to transport the property to Los Angeles. On the contrary, it is undisputed that the possession of the property was taken by the plaintiff in error at Chicago. The receipt bears upon it, "Owners Risk—Released to valuation of $5.00 per cwt. in case of loss or damage," and it is contended by the plaintiff in error that even if it is to be regarded as a common carrier, the amount of the recovery should be limited to $5 per cwt., and that the stipulation is valid in Michigan; that plaintiff in error should be regarded as a connecting carrier of the Grand Trunk Railway System. We do not agree with plaintiff in error in this contention. In the first place, no through rate was made from Battle Creek to Los Angeles. The consignment was practically to Chicago, to which point the freight was paid, and there the plaintiff in error made a new contract with the defendant in error, under which it undertook to take the custody of the goods and cause their transportation to Los Angeles at the rate of $1.75 per 100 pounds. This was done

in Chicago, and therefore the law of Illinois in respect
thereto must govern. In paragraph 4 of the receipt or "in-
land bill of lading" given the defendant in error it is pro-
vided that any damage arising, etc., should be settled on the
basis of $5 per cwt. of goods so damaged.

Section 1 of Chapter 27 of the Revised Statutes reads:

"That whenever any property is received by a common
carrier, to be transported from one place to another, within
or without this state, it shall not be lawful for such carrier
to limit his common law liability safely to deliver such prop-
erty at the place to which the same is to be transported,
by any stipulation or limitation expressed in the receipt
given for such property."

In the case before us no special contract was made with the
defendant in error limiting the carriers' liability.

Holding, as we do, that the plaintiff in error must be
treated as a common carrier, it follows that it is liable as
such under the common law.

*Affirmed.*

Mr. Justice Baldwin concurring:

I concur in the conclusion that, under the evidence in the
case, plaintiff in error was liable and, therefore, that the
judgment should be affirmed, but do not concur in all the
reasoning of the opinion.