[Civ. No. 2661.   Second Appellate District, Division Two.—May 10, 1920.]

## FRANK HEATH, Appellant, v. JUDSON FREIGHT FORWARDING COMPANY (a Corporation), Respondent.

[1] FORWARDING AGENT—DEPOSIT OF GOODS WITH—SERVICES UNDERTAKEN—RELATION OF COMMON CARRIER.—If goods are deposited with a forwarding agent merely as the initiatory step toward starting them *in itinere,* the forwarding agent having undertaken to do no more than to safely keep the goods and forward them when the opportunity offers itself, and being in nowise interested in their carriage after delivery to the carrier, such agent cannot be regarded as a common carrier.

[2] ID.—WHEN LIABILITY OF COMMON CARRIER ASSUMED.—Where a forwarding agent undertakes to transport property from its location in one city to another city, for through rates less than the published rates of the railroad company for broken lots, which it is enabled to do by accumulating property for the given destination until a car can be filled, which is billed to its distributing agent at the point of destination, such forwarding agent assumes, while holding the property for accumulation, the liability of a common carrier.

[3] ID.—RELATION TO OWNER—CARRIAGE OF GOODS TO DESTINATION—ABSENCE OF OWNER'S CONSENT.—Irrespective of whether its relation to the owner of the shipment be that of a common carrier or a mere forwarder, a forwarding company that, for hire, undertakes the carriage of goods of another in a car of its own selection, and delivery to the owner at the place of destination through its own distributing agent, cannot carry the goods on to the place of destination, as contracted for, against the owner's consent.

[4] ID.—RIGHT OF CONTROL OVER GOODS—STOPPAGE IN TRANSIT—LIABILITY OF OWNER FOR SERVICES NECESSITATED.—The owner does not renounce his right of all control over his goods by their delivery

---

1. Character as common carriers of persons or corporations other than express companies that neither own nor operate transportation routes, but undertake to transport goods, note, 42 L. R. A. (N. S.) 902.

4. Right of stoppage *in transitu,* notes, 29 Am. Dec. 384; 19 Am. Rep. 87; 1 Am. St. Rep. 312.

Right of shipper to demand a redelivery of or to divert property at intermediate point, notes, 15 L. R. A. (N. S.) 756; L. R. A. 1918B, 79.

to a common carrier or to a forwarder, but the latter stands in the relation of one employed as a bailee of goods for the purpose of obeying instructions of the owner regarding them and, subject to the payment of a reasonable charge for the services necessitated by his order, the owner has the right either to stop the goods in transit or to stop their shipment before actual transportation has commenced.

[5] ID.—LOADING OF GOODS ON CAR—RIGHT TO REDELIVERY—EXPENSE OF UNLOADING—LIABILITY FOR—LIEN.—Where the forwarding company has loaded the owner's goods on a car before receiving instructions to hold the shipment, but the goods, without any very great inconvenience, can be taken from the car at an expense not out of proportion to their value, the owner is entitled to a redelivery of the goods at the point of shipment, the forwarding company being allowed to charge a reasonable sum to compensate it for its trouble in taking the goods from the carload, to secure which charge it has a lien on the goods.

[6] ID.—INSTRUCTIONS TO HOLD SHIPMENT — REFUSAL TO OBEY UNJUSTIFIED—AUTHORIZATION TO UNLOAD NOT NECESSARY.—Where a forwarding company, after it has loaded the goods on the car but before such car has started, receives definite instructions from the owner to hold the shipment, and such goods can be taken from the car at an expense not out of proportion to their value, the forwarding company is not justified in refusing to obey such instructions because, within a time specified by it, it does not receive a reply to its telegram wherein the owner, after being advised that the goods are already loaded and the cost of unloading, is asked if he authorizes unloading.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Reversed.

The facts are stated in the opinion of the court.

W. A. Alderson for Appellant.

E. T. Sherer and Bicksler, Smith & Parke for Respondent.

FINLAYSON, P. J.—Defendant, a New York corporation, is engaged in the business of shipping and forwarding freight of all kinds, especially household furniture, from New York city to all points in the United States. For this purpose, defendant, at its loading station in Newark, New Jersey, assembles goods of various ownership that are to be shipped to a common destination. This is done for the

purpose of making up a carload, that thereby a through rate may be obtained that is less than the published rates of the railroad company for broken lots. The accumulated carload, so assembled for any given destination, is billed to defendant's distributing agent at the point of destination, and such distributing agent distributes the goods to the various owners at that place.

In the month of December, 1916, plaintiff, who then resided in New York, desiring to ship his household furniture to Los Angeles, which city he contemplated making his home, entered into a contract, at New York, with defendant, whereby defendant agreed to prepare plaintiff's household furniture for shipment and ship it from New York to Los Angeles. Plaintiff left the city of New York and arrived in Los Angeles about December 11, 1916. On December 18, 1916, defendant wrote a letter to plaintiff, addressed to the latter at Los Angeles, wherein defendant informed plaintiff that, owing to a freight congestion, plaintiff's household goods had not as yet arrived at the defendant's loading station at Newark.

On December 29, 1911, at Los Angeles, plaintiff, having decided to return to New York, sent to defendant, addressed to it at its New York office, a telegram reading as follows: "Hold shipment further instructions if not shipped wire my expense whether shipped or not."

This telegram was received by defendant at its New York office on December 30, 1916, at 9:30 o'clock A. M. At that time plaintiff's household furniture had been loaded on a car at Newark, but, as yet, the car had not started on its journey to California. When the car was finally loaded, the carload consisted of 124 packages, forty-three of which contained plaintiff's household furniture, the remaining packages containing goods belonging to other persons. Plaintiff's forty-three packages were the first to be loaded on the car. So that, to unload plaintiff's household furniture, it would have been necessary to unload the entire car. This would have involved an expense of about twenty dollars.

At 9:45 A. M., on December 30, 1916, which was a Saturday, defendant telegraphed from New York to plaintiff at Los Angeles as follows: "Your shipment loaded today do you authorize unloading cost about twenty dollars must have reply one o'clock New York time." It is claimed by plain-

tiff that this telegram was not actually received by him at Los Angeles until 11:55 A. M. of December 30th, which would be 2:55 P. M. at New York.

As we have said, December 30, 1916, was a Saturday. The regular time for closing defendant's office on Saturdays is 1 o'clock P. M. On this occasion, however, an employee of defendant remained at its office on December 30th until 6 o'clock to receive any telegram that plaintiff might send in reply to that sent by defendant to plaintiff at 9:45 A. M. of that day. Plaintiff did send a telegram to defendant in reply to that which, he says, was delivered to him at 11:55 A. M. That telegram, filed at Los Angeles at 11:58 A. M. of December 30th, reads: "Please unload goods and put in storage." For some reason this telegram was not delivered to defendant on December 30th. Because the next day was Sunday, and the following day, January 1st, a holiday, plaintiff's telegram of December 30th was not received by defendant until Tuesday, January 2, 1917. Upon its receipt, defendant sent plaintiff a telegram as follows: "Unfortunately your goods forwarded Saturday evening your wire not received until this morning through error or negligence of telegraph company no reply to wire Saturday afternoon. Compelled to forward car." We infer from the facts disclosed by the record that the car, loaded with plaintiff's household furniture and other shipments destined for Los Angeles, left Newark at about 6 o'clock P. M. of Saturday, December 30, 1916. On January 4, 1917, defendant wrote to plaintiff, addressed to him at Los Angeles, a letter which reads: "We beg to advise that your shipment of household goods was forwarded on Dec. 30, 1916 in a through car from Newark, N. J. consigned to our Distributing Agent: Los Angeles Warehouse Co. 316 Commercial St. Los Angeles, Calif. The charges on this shipment amount to $270.66 which you should pay to the Distributing Agent above named, and with whom you should make arrangements for taking possession of your goods as soon as car arrives. The Distributing Agent will gladly answer any inquiries which you may wish to make relative to the matter. Usual storage charges will be assessed on goods which are not removed from Freight House within forty-eight hours after arrival."

Upon these facts the trial court found that defendant had not disregarded plaintiff's instructions, and gave judgment for defendant. From that judgment plaintiff appeals.

. Respondent contends that the first telegram received by it from appellant, that filed by appellant at Los Angeles on December 29th and received by respondent on the morning of December 30th, was so uncertain that respondent was not obliged to withhold the goods · from shipment. With this contention we cannot agree. We think that, regardless of any delay in the receipt by respondent of appellant's telegram of December 30th, replying to that sent to appellant by respondent at 9:45 o'clock A. M. of that day, appellant's first telegram—that filed in Los Angeles on December 29th and received by respondent at New York on December 30th at 9:30 A. M.—was alone sufficient to charge respondent with the duty of withholding appellant's goods from shipment, and that because respondent did not do so it is liable for all damages proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

It seems that respondent undertook as a forwarder to transport appellant's goods from New York to Los Angeles, as part of a carload consigned to respondent's distributing agent at Los Angeles, the shipment being handled in that way in order that respondent might obtain the benefit of the reduced rate which is made where goods are shipped in a carload lot instead of less than carload lots. We are inclined to the view that respondent's liability is that of a common carrier. [1] If goods are deposited with a forwarding agent merely as the initiatory step toward starting them *in itinere,* the forwarding agent having undertaken to do no more than to safely keep the goods and forward them when the oportunity offers itself, and being in nowise interested in their carriage after delivery to the carrier, such agent cannot be regarded as a common carrier; [2] but where, as here, the forwarding agent undertakes to transport the property from its location in one city to another city, for through rates less than the published rates of the railroad company for broken lots, which it is enabled to do by accumulating property for the given destination until a car can be filled, which is billed to its distributing agent at the point of destination, such forwarding agent assumes, while holding the property for

accumulation, the liability of a common carrier. (*Judson Freight Forwarding Co.* v. *Delaware L. & W. R. Co.*, 163 Ill. App. 22; *Ingram* v. *American Forwarding Co.*, 162 Ill. App. 476; *Bare* v. *American Forwarding Co.*, 146 Ill. App. 388, affirmed in 242 Ill. 298, [89 N. E. 1021]; *Kettenhofen* v. *Globe Transfer & S. Co.*, 70 Wash. 645, [Ann. Cas. 1914B, 776, 42 L. R. A. (N. S.) 902, and note, 127 Pac. 295].)

However, whether respondent be treated as a forwarder or as a common carrier, we think the law is clear that it was its duty to obey any reasonable order to withhold the goods from shipment that it might receive from appellant, the owner of the property. We also are of the opinion that appellant's first telegram to defendant—filed in Los Angeles on December 29th and received by respondent at New York the next morning at 9:30 o'clock—was sufficient as a definite instruction to hold the shipment.

[3] Irrespective of whether its relation to the owner of the shipment be that of a common carrier or a mere forwarder, we are satisfied that a forwarding company that, for hire, undertakes the carriage of goods of another in a car of its own selection, and delivery to the owner at the place of destination through its own distributing agent, cannot carry the goods on to the place of destination, as contracted for, against the owner's consent. In this regard the obligation of the forwarder is not different from that of a common carrier; and what is said by the courts in cases against railroads and other indubitable common carriers is, we think, equally applicable to the situation presented here, whether respondent be regarded as a common carrier or as a forwarder only. Though we have found no case involving the duty of a forwarding agent to obey the owner's instructions not to ship, we think the case is controlled by the rule announced in an almost unbroken line of authorities, some of which are cited *infra*, that the true owner of goods to be transported by a common carrier retains some right of control, and, at any reasonable time before transportation has commenced, may order his goods to be withheld from shipment.

[4] The owner does not renounce his right of all control over his goods by their delivery to a common carrier or to a forwarder. The latter stands in the relation of one employed as a bailee of goods for the purpose of obeying in-

structions of the true owner regarding them.   The owner's right to control the shipment is an incident of his title. The title of the carrier or forwarder, whichever it may be, is subordinate to that of the owner.   Aside from its lien for lawful charges, a forwarding company cannot be allowed to defeat the owner's right to control the shipment.   Subject to the payment of a reasonable charge for the services necessitated by his order, the owner has the right either to stop the goods in transit or to stop their shipment before actual transportation has commenced.   (*Scothorn* v. *South Staffordshire R. Co.*, 8 Exch. 341; *Lewis* v. *Galena etc. R. Co.*, 40 Ill. 281; *Cincinnati etc. R. Co.* v. *Steele*, 140 Ky. 383, [140 Am. St. Rep. 388, 131 S. W. 22]; *Wente* v. *Chicago etc. R. Co.*, 79 Neb. 179, [15 L. R. A. (N. S.) 756, and extended note, 115 N. W. 859]; *Virginia etc. R. Co.* v. *Sutherland*, 138 Tenn. 266, [L. R. A. 1918B, 77, and note, 197 S. W. 863].)   In *Scothorn* v. *Smith Staffordshire R. Co., supra,* goods, intended for shipment, were marked, originally, ''East India Docks, London, by Melbourne Ship to Australia.''   Later the shipper notified the carrier to deliver the goods at Bell Wharf, Radcliffe, London.   There was a failure to comply with the request and the goods were forwarded to Melbourne and lost.   In allowing the plaintiff to recover, the court said: ''It is argued that that is a contract.   It is no contract in one sense; it is a person taking goods to be disposed of according to the directions of another; and is it to be contended that if, an hour afterward, the owner has come back and said he wanted the goods again, the company could have said, 'No, you have made a contract for them; they shall go to the ship'?   The contract with a carrier is, that he is a bailee of the owner's goods to obey his directions respecting them; and I have no hesitation in saying that, generally, at any period of the transit he may have them back; and the saying that a railroad company could carry a man's goods on against his consent is a proposition not supported either by law or common sense.   It may be different when the subsequent direction to the bailee is an unreasonable one.   I can conceive a case where a man may have authorized goods being put in a place where it would be very inconvenient to take them out; but, generally speaking, it is otherwise.   Suppose a man travels with luggage in a railway train and becomes dissatisfied with his journey, and

says, 'I wish to go out of the train,' he has a right to do so, and take his luggage with him; but, if Mr. Gray is right, the company would be justified in saying, 'You have delivered your luggage to us, and we will take it on.' I apprehend the real circumstances of such cases as these are, that, when a man delivers his goods to a carrier, he employs him as a bailee for reward; the man may be entitled to the reward, but the owner is entitled to have the goods back if he pleases.''

It doubtless is true that if the owner's goods have been put in a place where it would be very inconvenient to take them out, as, for example, if a trunk has been placed deep in the hold of a ship, under other cargo, and the ship is about to sail, so that taking the trunk out would delay the vessel's sailing and thus involve an expense out of all proportion to the value of the trunk and its contents, the owner would not have the right to redelivery of his trunk at the port of departure.   [5]   But here appellant's goods, without any very great inconvenience, could have been taken from the car at an expense not to exceed twenty dollars—an expense not out of proportion to the value of the articles. For its services in taking his property from the carload, in obedience to appellant's instructions, respondent would not be allowed to charge more than a reasonable sum to compensate it for its trouble. Had it obeyed appellant's instructions, the law would have implied an agreement on the latter's part to pay a reasonable charge for the unloading. (*Carr* v. *Pennsylvania Ry. Co.*, 92 N. Y. Supp. 799.) To secure such charge, respondent would have had a lien on the goods. (Civ. Code, secs. 1856, 2144.)

[6]   The telegram upon which appellant must rest his case, the telegram filed in Los Angeles on December 29th and received by respondent on the morning of December 30th, was not punctuated. We quote it again: "Hold shipment further instructions if not shipped wire my expense whether shipped or not." Respondent says that this telegram, by different punctuations, can be interpreted in at least four different ways. This may be so. But regardless of how punctuated, or how interpreted, the telegram always contains the definite instruction, "Hold shipment." It may be that the telegram should be read as directing respondent to hold appellant's shipment until further instructions were

received, or to hold the shipment if the goods had not already been shipped. The goods had not been shipped, and, under any interpretation, respondent is definitely directed to "hold shipment." This it did not do. Having received a definite instruction to "hold shipment," respondent could not justify its course merely because it did not receive, until January 2, 1917, a reply to its telegram of December 30th, asking appellant if he "authorized unloading," and notifying him that the unloading would cost about twenty dollars.

It is claimed that respondent could not be required to unload appellant's household furniture in order to "hold shipment," unless appellant entered into a new contract with respondent to pay the latter for unloading the car, which, according to respondent's telegram of December 30th, would amount to about twenty dollars. This insistence overlooks the fact that the owner's right to control the goods, and, if he pleases, to stop the shipment and direct and receive a redelivery of the goods, is, by law, implied in the shipment contract itself as a part thereof (*Virginia & Southwestern R. Co.* v. *Sutherland, supra*); and further, that the law implies an agreement by the owner to pay a reasonable charge for any extra services that may be necessitated by his exercise of the right thus to control the shipment.

There is no merit in the contention that appellant himself could have stopped the goods before their arrival at Los Angeles. It appears from respondent's letter of January 4, 1917, that the goods were consigned by respondent, as consignor, to itself, or to its distributing agent at Los Angeles, as consignee. Appellant, therefore, could have done nothing save through respondent.

Finally, it is contended that appellant cannot recover because he did not present a claim for his damages within thirty days. This contention is based upon a clause in the receipt that respondent gave the warehouseman from whom it received appellant's goods. That clause reads: " . . . Claim for any loss or damage must be presented within thirty (30) days from date of arrival of shipment at destination. All particulars and proof of loss or damage required by Railroad Companies or other Transportation Agency to be furnished by the claimant. If goods are placed in storage,

claim, if any, must be made before storing." The "claim" referred to in this clause of the receipt is a claim for loss or damage, while the goods are in transit, due to some fault of the railroad company. The clause was not intended to cover a claim for damages due to respondent's own dereliction.

The judgment is reversed.

Thomas, J., and Weller, J., concurred.