PAINE FURNITURE COMPANY *vs.* ACME TRANSFER AND STORAGE CO.

Suffolk. May 15, 1934. — March 25, 1935.

Present: RUGG, C.J., FIELD, DONAHUE, & LUMMUS, JJ.

*Carrier*, Of goods. *Warehouseman. Contract*, Construction. *Evidence*, Relevancy. *Estoppel.*

One, to the warehouse of whom as consignee goods of another were shipped by railroad pursuant to an agreement between the consignee and the owner of the goods whereby the consignee did not deliver them to the owner, but the owner was allowed two days in which to remove them from the warehouse before becoming subject to storage charges, was merely a warehouseman, not a common carrier, with respect to the goods during such two days; statements in a freight bill and an arrival notice sent to the owner by the consignee upon arrival of the goods, to the effect that they were "held at owner's risk and expense" and that if they were not removed within the two days they would be "stored for owner's account and risk," neither made the consignee an insurer of the goods during that period nor estopped him, as against the owner, to show that he was merely a warehouseman.

Inasmuch as the consignee above mentioned was not a common carrier of the goods, the provisions of the bill of lading under which they were shipped were irrelevant in determining the contract between the consignee and the owner.

The consignee above mentioned being merely a warehouseman with respect to the goods, he was not liable to the owner for their loss in a fire which occurred in the warehouse without negligence on the part of the consignee.

CONTRACT OR TORT. Writ in the Municipal Court of the City of Boston dated October 19, 1931.

The action was heard in the Municipal Court by *Cohen, J.* Material facts are stated in the opinion. The judge found for the defendant. A report to the Appellate Division was ordered dismissed. The plaintiff appealed.

*W. C. Rosen*, for the plaintiff.

*C. R. Walton*, for the defendant.

RUGG, C.J.   The facts as reported by the trial judge, so far as pertinent to the questions of law to be decided, are these: The plaintiff was a dealer in furniture, carpets and like articles.   The defendant was a distributor and forwarder of merchandise.   Each was a corporation with a place of business in Boston.   For several years they had had relations with each other similar to those in the case at bar.   The Furniture Manufacturers Warehouse Co. did business in Grand Rapids, Michigan.   It collected furniture from manufacturers in its neighborhood which had been ordered by dealers in and around Boston and shipped it by railroad freight cars consigned to the defendant in Boston. This arrangement gave to the purchaser of the furniture the benefit of a freight charge based upon carload rates, which was much cheaper than that of shipments of less than a carload.   The defendant solicited the business of furniture buyers in and around Boston of having their shipments of furniture from Grand Rapids consigned to it through the forwarding company in Grand Rapids.   Under the agreement of the parties, the defendant did not send any shipments to the plaintiff's place of business, but the plaintiff had a specified time within which to remove the goods before being subject to storage charges.   On June 27, 1930, the defendant received from Grand Rapids under its contract with the plaintiff a consignment of furniture belonging to the plaintiff.   The defendant immediately placed the goods in its warehouse, located in the yards of the Boston and Maine Railroad in Boston, and sent its usual form of arrival notice to the plaintiff.   According to the notice and the agreement of the parties, the plaintiff could remove the goods from the defendant's warehouse at any time before July 1 without becoming liable for demurrage charges.   On June 28, a fire which destroyed the plaintiff's furniture occurred in the defendant's warehouse. It was agreed that the fire was not caused by any negligence of the defendant or its agents.   Notice of the damage was sent to the plaintiff on June 30.   The plaintiff there-

upon made claim against the defendant for the loss. There was evidence tending to show that the freight bill sent to the plaintiff by the defendant on the day of the arrival of the goods contained the statements: "All goods held at owner's risk and expense." "Goods not removed within 48 hours from date of notice will be stored for owner's account and risk." Similar statements were in the arrival notice sent to the plaintiff. The defendant customarily submitted to the plaintiff a freight bill, an arrival notice, and a consignee's memorandum. The defendant was not required to and did not send any shipments to the plaintiff's place of business. The defendant always settled claims for loss in transit with the railroads and remitted the proceeds to the plaintiff. The plaintiff offered in evidence the straight bill of lading dated June 21, 1930, issued by the New York Central Railroad Company to the forwarding company in Grand Rapids, in which the defendant was named as consignee. The bill was offered to show that the defendant became a carrier and was bound by the contract therein contained. After it was excluded on this issue, it was offered to show custom in dealings between the parties and it was again excluded. The plaintiff then made offer of proof that the parties dealt with each other as the plaintiff dealt with other carriers, that other carriers dealt in accordance with the bill of lading, and that by its terms the defendant was liable as a carrier during the time allowed for the plaintiff to take delivery. The judge again excluded the bill of lading when offered for this purpose. To each of the rulings excluding the bill of lading the plaintiff duly excepted and requested that the ruling be reported.

The trial judge ruled that the relation of the defendant to the plaintiff was that of warehouseman and, since it was conceded that there was no negligence on the part of the defendant, made a finding in its favor.

The important question is whether the defendant was a common carrier and acted for the plaintiff in that capacity. It was said in *Dwight* v. *Brewster*, 1 Pick. 50, 53, that a common carrier is "one who undertakes, for hire or reward, to transport the goods of such as choose to employ

him, from place to place." In *Buckland* v. *Adams Express Co.* 97 Mass. 124, 129, 130, it was said of common carriers that the "real nature of their occupation and of the legal duties and obligations which it imposes on them is to be ascertained from a consideration of the kind of service which they hold themselves out to the public as ready to render to those who may have occasion to employ them. . . . The essence of the contract is that the goods are to be carried to their destination, unless the fulfilment of this undertaking is prevented by the act of God or the public enemy." *Bank of Kentucky* v. *Adams Express Co.* 93 U. S. 174, 181. *Bare* v. *American Forwarding Co.* 146 Ill. App. 388, 391; affirmed in 242 Ill. 298, 300. These definitions of the characteristics of a common carrier show that the defendant did not undertake with reference to the goods of the plaintiff the functions of a common carrier. The goods of the plaintiff with those of other furniture dealers in the vicinity of Boston were collected in Grand Rapids by the forwarding company there. That company was the shipper. It was wholly separate and distinct from the defendant. The defendant was the consignee at Boston. The transportation between the place of shipment and the point of destination was by the railroad. No obligation of transportation rested upon the defendant. As consignee, it simply received from the railroad the goods on their arrival in Boston. It did not send any shipments to the plaintiff's place of business. Its storage warehouse was in the yard of the railroad in Boston and comprised space in a building of the railroad. Into that warehouse the goods of the plaintiff were unloaded directly from the freight car in which they had been transported from Grand Rapids. The course of business between the parties was for the plaintiff to send its own vehicles to the warehouse to receive its goods on the loading platform of the defendant's warehouse and to transport them to its place of business. It is not necessary to inquire what might have been the responsibility of the railroad as carrier if the defendant had not intervened as consignee. There is nothing in *Michigan Central Railroad* v. *Mark Owen & Co.* 256 U. S. 427, or in *South Deerfield*

*Onion Storage Co.* v. *New York, New Haven & Hartford Railroad,* 222 Mass. 535, 537, at variance with the view that, on the facts here disclosed, the defendant was not a common carrier of the goods in question. It undertook no duties of a common carrier with respect to these goods of the plaintiff. The case at bar is quite distinguishable from *Bare* v. *American Forwarding Co.* 146 Ill. App. 388, affirmed in 242 Ill. 298, *Mercantile Mutual Ins. Co.* v. *Chase,* 1 E. D. Smith, 115, and *Kettenhofen* v. *Globe Transfer & Storage Co.* 70 Wash. 645, where the services undertaken by the defendant were those of transportation and delivery and substantially like those of the defendant in *Buckland* v. *Adams Express Co.* 97 Mass. 124. Manifestly, the test whether one is a common carrier depends on the obligation assumed and not upon the descriptive name employed. Its contract with the plaintiff required the defendant only to receive and store the shipment and notify the plaintiff.

The statements of the defendant in the arrival notice and the freight bill sent to the plaintiff, already quoted, do not render the defendant liable as insurer. They are not fairly susceptible of that construction in view of all the circumstances establishing relations between the parties. Although somewhat similar to notices which might be sent by a common carrier, they are reasonably incident to the business of the defendant and contain no element estopping the defendant to show the true business transaction between it and the plaintiff. *Nealand* v. *Boston & Maine Railroad,* 161 Mass. 67.

The defendant did not become liable as a carrier by the terms of the bill of lading under which the goods were transported from Grand Rapids to Boston. On its face it showed that the defendant was the consignee and the destination its place of business in Boston. The bill of lading was rightly excluded. It was found at the trial that the defendant was consignee and had received the goods. The contract disclosed by the bill of lading was irrelevant on the issue of the contract between the plaintiff and the defendant. The provision of the bill of lading to the effect that the railroad as carrier bound itself and

"any person or corporation in possession of the property under the contract" did not bind the defendant unless it was a common carrier. The bill of lading constitutes both a receipt for the goods and a contract for carriage and delivery. *Aradalon* v. *New York, New Haven & Hartford Railroad,* 225 Mass. 235, 238–239. *L. E. Fosgate Co.* v. *Atlantic Coast Line Railroad,* 263 Mass. 192, 197. The defendant was not bound to the plaintiff by the clauses of the bill of lading stating the obligations of the carrier simply because it was consignee named in the bill of lading. Since the defendant was not a carrier, the provision above described did not bind it. The requests for rulings based on the bill of lading were rightly refused because immaterial. *Commonwealth* v. *Trippi,* 268 Mass. 227, 232. *Crowninshield Shipbuilding Co.* v. *Jackman,* 283 Mass. 21, 22.

*Order dismissing report affirmed.*