JOHN ARADALOU *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Bristol.   October 23, 1916. — November 28, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Carrier,* Of goods. *Bill of Lading. Interstate Commerce. Contract,* What constitutes, In writing. *Evidence,* Of intent, Of customary act, Competency. *Equity Jurisdiction,* Mistake.

Where a bill of lading for household goods shipped by rail, which were worth more than $10 a hundred pounds but much less than $1,000 a hundred pounds, contained a "release clause" stamped upon it and signed by the shipper, in which before the shipper signed it the agent of the carrier, who had intended to fill in the blank spaces left for the value of the goods with the figures "10.00" before the word "dollars," in filling these blank spaces had left out the decimal point, so that the clause read, "For the purpose of enabling the carrier to apply the proper published rate, as explained in its classification and tariffs, I hereby declare that the value of the property herein described does not exceed 1000 dollars per cwt pounds, and that in case of loss or damage thereto, I will not

assert claim against the carrier on a higher basis of value than 1000 dollars for each cwt pounds or fraction thereof in weight of the property so lost or damaged," where each of the corresponding blank spaces in the release clause stamped upon the shipping order was filled in with an "indecipherable scrawl," although the carrier's agent had intended to write the word "ten" before "dollars," and where "there was no talk about the release clause" when the goods were received by the carrier and when the shipping order and the bill of lading were delivered, it was *held* that the uncommunicated intention of the carrier's agent was immaterial, that both parties were bound by both writings and that the shipper could recover the full value of goods lost by the carrier.

In an action for the loss of the goods mentioned above, which were shipped from one State to another, the settled doctrine was referred to, that a contract limiting the liability of a carrier for the loss of goods entrusted to him, as a part of the agreement as to the rate charged, is in effect an agreement respecting the value of the property shipped and is valid under the provisions for the regulation of rates contained in the statutes of the United States relating to interstate commerce.

In the same case it was *held* that the findings of fact of the trial judge, made from an inspection of the original documents, that the figures "1000" were inserted by the defendant's agent before the word "dollars" in the blanks in the bill of lading and that in the corresponding clause stamped on the shipping order the defendant's agent, where he intended to write the word "ten" before "dollars," in each case had "made an indecipherable scrawl," were not subject to revision by this court, which has no jurisdiction to determine facts in actions at law.

Accordingly when the original documents were presented to this court for inspection at the argument, the court refused to pass upon these questions of fact, but *held* that the findings of the trial judge were justified, and *said* that there appeared to be no reason to doubt their correctness.

Where the parties to an instrument in writing in attempting to put their agreement in writing express essential terms of their supposed agreement by characters or symbols so illegible that the tribunal of fact before which the instrument is presented at a trial cannot determine the signification of the marking and finds it to be an "indecipherable scrawl,". the writing is of no effect and no contract is made by it.

In the case above described it was *said* that, if the release clause stamped on the bill of lading and that stamped on the shipping order should be construed together, the clause in the bill of lading in which the figures "1000" were inserted plainly in each of the blank spaces before the word "dollars" must control.

The uncommunicated intent of one party to a contract when he is reducing to writing the supposed agreement of the parties, which supposed agreement subsequently is signed by both of them, is not admissible in his own favor in an action where the meaning and effect of the contract are in controversy between the parties.

In the case above described it appeared that the release clause in question was stamped upon the bill of lading and the shipping order by a rubber stamp and that the defendant commonly used the stamp only when the value declared by the shipper was ten dollars per hundred weight. There was nothing to indicate that the shipper knew of this custom. *Held,* that the circumstance of the customary use of the stamp was of no consequence, and that, even if it had been shown that the custom was known to the shipper, it could not have affected the words that were written or omitted in the blank spaces.

In the case above described the defendant contended that it could not be held liable for more than $10 per hundred pounds because the rate charged by the defendant and prepaid by the plaintiff was on that basis. *Held,* that, as the plaintiff's only representation of value was that the goods did not exceed $1,000 per hundred pounds in value, which was much more than the amount that he sought to recover as their true value, he lost no rights if the defendant by mistake charged too low a rate.

In the same case it was *said* that it was not necessary to consider what would have been the rights and liabilities of the parties if no declaration of value had been made by the shipper.

In the same case it was *said,* that if there was a mutual mistake of fact in the wording of the bill of lading, which did not appear to have been the case, the defendant might have been granted relief in a suit in equity to reform the instrument in writing.

CONTRACT upon a bill of lading to recover the amount of $75 alleged to have been the value of household goods shipped over the defendant's line of railroad from New Haven in the State of Connecticut to New Bedford in this Commonwealth, and lost in transit. Writ in the Third District Court of Bristol dated October 6, 1914.

The defendant filed an offer of judgment, consenting to be defaulted and that judgment might be entered against it in the sum of $15 as damages.

On appeal to the Superior Court the case was tried before *Lawton,* J., without a jury. The evidence is described in the opinion. The judge made a memorandum of decision containing the findings of fact which are stated in the opinion. The defendant asked the judge to rule that the plaintiff was not entitled to recover as damages a sum greater than $15. The judge refused to make this ruling, and made the rulings described in the opinion. He found that the plaintiff was entitled to recover $75 as damages and ordered that judgment be entered for the plaintiff in that sum. The defendant alleged exceptions.

*A. W. Blackman,* for the defendant.

*A. Auger,* for the plaintiff.

RUGG, C. J. This is an action to recover the value of household goods shipped in interstate commerce by virtue of a contract with the defendant over its line from New Haven, in the State of Connecticut, to New Bedford in this Commonwealth, and lost in transit. The actual value of the goods is conceded to be $75. The plaintiff is entitled to recover that sum unless prevented by

an agreement with the defendant or by the terms of the interstate commerce act. The defendant contends that its liability is limited to $10 per hundred weight by virtue of an agreement contained in the so called "release clause," which appears on the bill of lading, marked "Exhibit A," on the shipping order, marked "Exhibit C," and on the "release" attached to the statement of agreed facts marked "Exhibit B," three papers issued at the time of the shipment.

A contract limiting the liability of a carrier for the goods in case of loss, made as a part of an agreement for the rate charged, is valid under the recent acts of Congress regulating·rates. Such a contract is in effect an agreement respecting what the property is as to value. That was the rule established by this court. *Bernard* v. *Adams Express Co.* 205 Mass. 254. It is the settled doctrine of the United States Supreme Court, whose decisions in this particular are binding upon other courts, that, "where alternate rates fairly based upon valuation are offered, a railroad may limit its liability by special contract." *Cincinnati, New Orleans & Texas Pacific Railway* v. *Rankin,* 241 U. S. 319, 327.·

The release clause on each of the three papers was signed in the name of the plaintiff by his agent. The release clause was affixed to each of these papers by a red ink stamp furnished and used by the defendant, which with its blanks was as follows: "For the purpose of enabling the carrier to apply the proper published rate, as explained in its classification and tariffs, I hereby declare that the value of the property herein described does not exceed      dollars per      pounds, and that in case of loss or damage thereto, I will not assert claim against the carrier on a higher basis of value than      dollars for each      pounds or fraction thereof in weight of the property so lost or damaged." This controversy arises because of the character of the writing or figures inserted in the blank spaces in these release clauses.

Regarding the way in which these blanks touching the value of the goods were filled, the Superior Court judge found that on Exhibit A, which was the bill of lading, the agent of the defendant · "writing the paper intended to write 10.00 before the word 'dollars.' He made no decimal point, and the limitation in each case on Exhibit A is clearly 1000 dollars. I am satisfied that on

Exhibit C he intended to write the word 'ten' before the word 'dollars,' but in each case he made an indecipherable scrawl which might as well be taken to be the Arabic numeral 1 followed by two ciphers looped together as the written word 'ten'."

The three original instruments marked Exhibits "A," "B," and "C," pursuant to a clause in the exceptions, were presented to this court at the argument. The defendant asks us to decide that the judge was wrong in his finding of fact by inspection of these original documents. That cannot be done. The full court sitting *in banc* has no jurisdiction to determine facts in actions at law. It can only decide questions of law. *Electric Welding Co. Ltd.* v. *Prince,* 200 Mass. 386. *Marvel* v. *Cobb,* 204 Mass. 117. Whether markings upon paper are legible or undecipherable is a question of fact and not of law. The only question of law that can be presented in a case like the present where the original instrument is made a part of the exceptions is whether there was any evidence to support the finding. *Bailey* v. *Marden,* 193 Mass. 277, 279. It is clear from an inspection of the original paper that the finding as to "an indecipherable scrawl" was quite justified. No rulings were asked as to the effect of Exhibit B. The judge did not make any finding respecting it, nor decide whether it was legible or not. Under these circumstances, by itself it cannot affect the determination of the case presented on the record. It is not necessary to consider whether, even if its release clause was different from that on the bill of lading, it could control or affect the terms of the bill of lading, which is required to be issued by the carrier by the Hepburn act of U. S. St. June 29, 1906, c. 3591, (34 U. S. Sts. at Large, 593,) in § 7, the Carmack amendment, *Atchison, Topeka & Santa Fe Railway* v. *Harold,* 241 U. S. 371, 378, and which, according to well established commercial usage, constitutes the contract between a shipper and carrier. See *Southern Railway* v. *Prescott,* 240 U. S. 632. The case must be decided on the footing that these findings of fact by the trial judge were right. It may not be inappropriate to add that there appears to be no reason to doubt their correctness.

The contract as to restriction of the defendant's liability in case of loss between the parties, in the bill of lading, limited the value of the goods to an amount not exceeding "1000 dollars." That is the finding of the judge. If that be taken as the whole

contract of the parties, the plaintiff is not precluded from recovery of the full value of his goods, which is much less than $1,000. The blanks in the release clause on the shipping order, Exhibit C, are found by the judge to be an "indecipherable scrawl," which might be taken for the Arabic figures "100" as well as for the word "ten." An "indecipherable scrawl" does not constitute a contract. When the parties undertake to put their agreement in writing and express its crucial terms by characters or symbols so illegible that the tribunal established to try the facts cannot determine the signification of that which is on the paper, then no contract in writing has been made. That which was written upon the shipping order, Exhibit C, in the release clause, being of no effect, cannot modify the agreement of the parties expressed on the bill of lading. If the two papers be construed together, the one of plain words controls the rights of the parties unaffected by the other meaningless paper.

The judge ruled rightly that what the defendant's agent intended to do when he wrote in the blank spaces of the limitation clause on the shipping order was immaterial. The intent of one party in reducing to writing a contract, which subsequently is signed by both parties, not communicated to the other party, is not admissible in his own favor in an action where the meaning and effect of the contract are in controversy between the parties. *Taft* v. *Dickinson*, 6 Allen, 553. *Tallant* v. *Stedman*, 176 Mass. 460.

So far as the case stands upon the paper agreement of the parties set forth in the bill of lading, it is manifest that there is nothing to prevent the plaintiff from recovering the full value of the goods. The representation of maximum value which he made at the time of shipment was far in excess of the amount which he now demands. In this connection the circumstance that the defendant commonly used the stamp only when the value declared by the shipper was $10 per one hundred weight is of no consequence. There is nothing to indicate that the shipper knew this custom, even if otherwise it could affect what in fact was written.

The defendant contends that it cannot be held liable for more than $10 per hundred pounds, because the rate charged and prepaid was on that basis. In this connection the following agreed facts are pertinent: "The defendant had in effect, at the time the

shipment moved, certain tariffs filed and posted, as required by
law, providing for two different rates on shipments of household
goods: The higher rate was to-be used when the goods were not
released; the lower rate was to be used when the goods were shipped
at the released valuation, which, in accordance with the tariff,
was ten ($10) dollars per hundred (100) pounds, in case of loss or
damage. The defendant had no released valuation for household
goods: except that of ten ($10) dollars per one hundred (100)
pounds. . . . In the present case, the freight charges which were
assessed were at the lower rate, or the rate provided for goods
which were released." These freight charges were prepaid by the
shipper. "Released" and "released valuation" as used in these
agreed facts we understand to mean a statement of the value of
the goods shipped made in a form similar to that embodied in
the "release clause" which has already been set forth in full.
The "release clause" quoted above was stamped upon the face
of the bill of lading by a red ink stamp and, after being filled in as
before stated, was signed in the name of the plaintiff. One condi-
tion of the bill of lading was that "The amount of any loss or
damage for which any carrier is liable shall be computed on the
basis of the value of the property (being the *bona fide* invoice
price, if any, to the consignee, including the freight charges, if
prepaid) at the place and time of shipment under this bill of
lading, unless a lower value has been represented in writing by
the shipper or has been agreed upon or is determined by the
classification or tariffs upon which the rate is based, in any of
which events such lower value shall be the maximum amount to
govern such computation whether or not such loss or damage
occurs from negligence." Since the bill of lading relates to in-
terstate commerce, its proper construction is a federal question.
The acts of Congress and decisions of the Supreme Court of the
United States are controlling and must be followed. *Georgia,
Florida & Alabama Railway* v. *Blish Milling Co.* 241 U. S. 190.

Obviously no lower value was represented in writing by the
shipper. The only representation by him as to value was that the
goods did not exceed $1,000 in value, a maximum limit much
higher than the real value. But so far as the shipper is concerned
he represented a maximum limit of value for the express "pur-
pose of enabling the carrier to apply the proper published rate,

as explained in its classification and tariffs" to the proposed
shipment. That is the purpose stated in the clause signed by him
on the bill of lading. Being a part of a contract in writing, it binds
the parties. It does not appear that the shipper had anything to
say further about the rate to be charged. Apparently he paid the
rate which was asked. If too low a rate was charged, it did not
arise from any misstatement, silence or conduct by him. If the
carrier by mistake charged too low a rate there is nothing to pre-
vent it from recovering of the shipper the published rate. *New
York, New Haven, & Hartford Railroad* v. *York & Whitney Co.*
215 Mass. 36. *Louisville & Nashville Railroad* v. *Maxwell,* 237
U. S. 94. *Dayton Coal & Iron Co. Ltd.* v. *Cincinnati, New Orleans
& Texas Pacific Railway,* 239 U. S. 446.

But when the shipper makes an express representation of value
for the purpose of enabling the carrier to fix the rate, and a rate is
fixed by the carrier, which by mistake is based on the theory that a
much lower valuation was fixed than that in fact contained in the
written statement of value signed by the shipper, the rights of the
shipper cannot be affected within the limits established by his dec-
laration of value by the rate which the carrier exacts. The conten-
tion of the defendant is in substance that, even though a shipper
has declared a high value for the purpose of enabling the carrier to
fix a rate, he nevertheless is bound to a much lower limitation of
value simply because of the rate actually prepaid; that it is the
rate charged and not the value declared which fixes the carrier's
liability. That argument is an inversion of sound reason. The
declaration of value fixes both the legal rate and the amount re-
coverable; the rate actually charged does not control a written
declaration of value. It was said in *Kansas City Southern Railway*
v. *Carl,* 227 U. S. 639, by Mr. Justice Lurton at page 652, "The
valuation the shipper declares determines the legal rate where
there are two rates based upon valuation. He must take notice of
the rate applicable, and actual want of knowledge is no excuse.
. . . When there are two published rates, based upon difference
in value, the legal rate automatically attaches itself to the declared
or agreed value. Neither the intentional nor accidental misstate-
ment of the applicable published rate will bind the carrier or
shipper. The lawful rate is that which the carrier must exact and
that which the shipper must pay." *Adams Express Co.* v. *Cronin-*

*ger*, 226 U. S. 491. *George N. Pierce Co.* v. *Wells, Fargo & Co.* 236 U. S. 278, 283. These words of Mr. Justice Lurton were used in deciding a case where a shipper was endeavoring to escape the effect of his statement of a low valuation. But they are equally applicable to a carrier which is trying to evade the effect of a contractual assertion of high value by the shipper. Doubtless all parties are bound by the schedules of rates fixed according to law and cannot vary or affect them by oral or written contracts. *Atchison, Topeka & Santa Fe Railway* v. *Robinson*, 233 U. S. 173. But that does not mean that, when a shipper declares one value of his goods, on which the higher of two rates ought to be charged, that declaration can be made naught because the carrier charges him the lower rate, especially when, as already has been pointed out, the carrier can collect the higher rate by subsequent action at law, notwithstanding the initial collection of the lower rate. The rule established in *Cincinnati, New Orleans & Texas Pacific Railway* v. *Rankin*, 241 U. S. 319, 327, to the effect that "The essential choice of rates [by the shipper] must be made to appear before a carrier can successfully claim the benefit of such a limitation and relief from full liability," is applicable to the case at bar. Certainly there is disclosed on this record nothing to indicate a voluntary, intentional or intelligent choice by the shipper of the lower and limited liability rate.

The clause in the bill of lading limiting liability to the lower value because "determined by the classification or tariffs upon which the rate is based" is not applicable to a case where a value actually is represented in writing by the shipper and the rate lower than that permitted or required by the stated value is nevertheless charged by the carrier without collusion or actual knowledge of the classification or rate by the shipper so far as appears. There is hardly a contractual meeting of minds under such circumstances. We are not aware of any provision in the acts of Congress or binding decision which compels us to hold under the circumstances here disclosed that a limitation of his right of recovery to an amount below the true value of his goods is imposed on the shipper. *Boston & Maine Railroad* v. *Hooker*, 233 U. S. 97, seems to us to fall far short of requiring such a result. It is inequitable to permit the carrier by charging the lower rate to prevent the shipper from relying upon his express declaration of value simply by refer-

ring to a published schedule where two alternative rates are stated, the higher one of which ought to have been charged if reliance had been placed on the declared statement of value made by the shipper. Such an interpretation of the law in effect would permit the railroad to elect after the event the course most to its interests, by collecting the balance of the higher rate in case of a safe delivery, and by limiting its liability to the lower value fixed by the rate actually exacted in case of loss.

It is unnecessary to consider what would have been the rights and liabilities of the parties if no declaration of value had been made by the shipper. See *Boston & Maine Railroad* v. *Hooker*, 233 U. S. 97.

The argument of the defendant proceeds in large part upon the theory that the statement of value of the goods was a mistake and was intended to be "10.00 dollars" instead of "1000 dollars." But the judge made no finding to that effect. On the contrary, he found that "There was no talk about the release clause." He ruled rightly, in view of that finding, that both parties are bound by the two writings, Exhibits A and C. *Johnson* v. *New York, New Haven, & Hartford Railroad*, 217 Mass. 203. *Secoulsky* v. *Oceanic Steam Navigation Co.* 223 Mass. 465.

Moreover, if there was a mutual mistake of fact in the phrasing of the bill of lading, relief might have been granted to the defendant in equity on a bill to reform the written instruments. *Dzuris* v. *Pierce*, 216 Mass. 132, 135. *Hayes* v. *Penn Mutual Life Ins. Co.* 222 Mass. 382, 385. But such relief does not appear to have been sought or granted. The rights of the parties in the present action depend upon the bill of lading as written.

*Exceptions overruled.*