Lehman Harvey Young, Mary Rebecca Orton Newcomber,[1] and Evelyn Alice Hollar Young appeal from the Baldwin Circuit Court's judgment against them and in favor of John Pelham Pimperl and Judy Aileen Pimperl. We reverse and remand.
 Facts and Procedural History
Lehman Harvey Young, Mary Rebecca Orton Newcomber, Howard Franklin Young, Jr., Evelyn Alice Hollar Young, and Virginia Caroline Young Martin (hereinafter collectively referred to as "the landowners") each owned an undivided 1/5 interest in a 20 acre parcel of property located in Baldwin County. John Pimperl and his wife Judy Pimperl discussed with each of the landowners the possibility of the Pimperls' purchasing the land. When the Pimperls reached what they believed to be an agreement with the landowners as to a fair price for the land, the Pimperls mailed each of the landowners[2] a quitclaim deed, along with a purchase agreement, to be executed and mailed back to the Pimperls.
Lehman, Mary, Evelyn, and Virginia each executed a copy of the purchase agreement and the quitclaim deed each had received and mailed the documents back to the Pimperls. The Pimperls then contacted Howard and inquired as to why he had not executed his purchase agreement and quitclaim deed. Howard told the Pimperls that he believed that the property was worth more than the price reflected in the purchase agreement as the sales price and that, consequently, he did not intend to execute the purchase agreement and deed.
The Pimperls recorded the deeds they had received from Lehman, Mary, Evelyn, and Virginia, and sent them each a check in the amount of $2,300, representing 1/5 of the purchase price of the entire property. The Pimperls also sent Virginia an additional $1,000 as reimbursement for funds she had expended to redeem the land from a tax sale. The next month, Lehman, Mary, and Evelyn returned to the Pimperls the checks they had received for $2,300 with letters stating that they no longer intended to sell their interests in the land to the Pimperls.
The Pimperls filed an action in the Baldwin Circuit Court, seeking a declaration of ownership of the property interests of Lehman, Mary, and Evelyn, and seeking a partition of the land and a sale against Howard.[3] The defendants answered the complaint and filed a counterclaim, seeking a declaration that the purchase agreements and quitclaim deeds containing their signatures are a nullity and vaguely alleging "misrepresentation." After a bench trial, the trial court entered an order finding that the purchase agreements and quitclaim deeds executed by Lehman, Mary, and Evelyn were binding contracts for the sale of their undivided interests in the land. The court then ordered the Pimperls to pay Lehman, Mary, and Evelyn $2,300 each for their interests in the land. The court further found "by stipulation of the parties that the deed [from] Virginia Carolyn [sic] Young Martin is a valid conveyance of her fractional interest in the property subject to the complaint."
The court then determined that the Pimperls were entitled to purchase the *Page 830 
remaining 1/5 undivided interest from Howard. The court appointed a licensed appraiser to perform a valuation of the remaining 1/5 interest to serve as the basis for a purchase price. The Pimperls then had 30 days from the date of the valuation in which to pay to Howard the purchase price as set by the court-appointed appraiser.
Lehman, Mary, and Evelyn (hereinafter collectively referred to as "the appellants") appeal the trial court's order finding that their execution of the purchase agreements and deeds constituted binding contracts with the Pimperls for the sale of their interests in the land.
 Discussion
The appellants argue that the trial court incorrectly held that the purchase agreement, without Howard's signature, constituted a binding contract. Specifically, the appellants contend that the purchase agreement, as written by the Pimperls, stipulated that the transaction would occur only upon the agreement of all five landowners to sell the land. Thus, the appellants argue, because only four of the five landowners signed the purchase agreement, there is no binding contract for the sale of the appellants' interests in the land. We agree.
Sections 6-6-223 and 6-6-224, Ala. Code 1975, give a trial court the authority to construe a contract and to declare rights thereunder before or after any alleged breach occurs.[4] In this case, the appellants argue that they are not bound by the purchase agreement because, they assert, the purchase agreement clearly required the participation of all five landowners for the transaction to occur. On the other hand, the Pimperls maintain that the appellants are bound by the purchase agreement because, they claim, the purchase agreement allowed each landowner to agree separately to sell his or her interest in the Baldwin County property.
The trial court did not find, and the parties do not argue, that the contract is ambiguous. Thus, the issue in this case is whether the trial court correctly construed the terms of the purchase agreement. We review such a decision de novo:
 "As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law. Commercial Credit Corp. v. Leggett, 744 So.2d 890 (Ala. 1999). Thus, we apply a de novo review to a trial court's determination of whether a contract is ambiguous and to a trial court's determination of the legal effect of an unambiguous contract term."
Winkleblack v. Murphy, 811 So.2d 521, 525-26 (Ala. 2001).
The purchase agreement provides, in pertinent part:
 "The agreement made and entered into this ____ day of ____, 2000, by and between, Lehman Harvey Young, Mary Rebecca Orton Newcomber, Howard Franklin Young, Jr., Evelyn Alice Hollar Young and Virginia Caroline Young Martin, hereinafter called the Sellers, and John Pelham Pimperl and Judy Aileen *Page 831 
Pimperl, hereinafter called the Buyers.
 "1. Subject property: The Sellers agree to sell and convey by quitclaim deed and the Buyers agree to purchase, the real property situated in Bay Minette, Alabama, more fully described as follows, subject to the provisions herein:
 "CALC AC 20 DY AS LOT 33 AKA E 1/2 of SW 1/4 of SE 1/4 SEC 4-1-4 FE
 "2. Purchase price: The total purchase price for the property shall be $12,500.00,[5] payable to the Sellers in cash or its equivalent at closing. The sale proceeds are to be divided among the [Sellers] as per their separate agreement.
"3. Terms and conditions:. . . .
". . . .
 "(c) The Sellers have authorized the Buyers to escrow the sum of $12,500.00 with Mark D. Ryan, P.C. . . . to be held until such time as all quitclaim deeds are executed and returned by the respective Sellers.
 "(d) The Sellers further authorize Mark D. Ryan, P.C., to pay the full purchase price in paragraph 2 herein, to Virginia Caroline Young Martin . . . upon performance by Sellers of all terms herein.
". . . .
 "5. Entire agreement: Both the Buyer and the Seller agree that this agreement constitutes the sole and only agreement between them respecting the property and correctly sets forth their obligations to each other as of its date."
(Emphasis added.)
 "`Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning.'
 "Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala. 2000) (citations omitted)."
Lewis v. Oakley, 847 So.2d 307, 327 (Ala. 2002). When the terms of the purchase agreement are read as a whole and each word is given its ordinary, plain, and natural meaning, it is clear that the purchase agreement requires the participation of all of the landowners for the sale of the land to occur.
The introductory paragraph of the purchase agreement explicitly states that all five landowners constitute the "Sellers," as that term used in the purchase agreement. In paragraph 1 of the purchase agreement, the "Sellers" agree "to sell and convey by quitclaim deed" the property to the Pimperls. The total purchase price for the land is to be paid to the "Sellers" once they have completed and returned all five of the quitclaim deeds sent to each of them by the Pimperls. Paragraph 3(d) specifically requires that the "Sellers" — all five of the landowners — perform all of the terms contained in the purchase agreement. Thus, when fewer than all five of the "Sellers" explicitly named in the purchase agreement performed according to the terms in the purchase agreement, their actions were insufficient to fulfill the terms of the agreement.
 Conclusion
The purchase agreement clearly required the participation of all five landowners *Page 832 
to sell their interests in the Baldwin County property and to execute the purchase agreement and the quitclaim deeds. Because fewer than all five of the landowners agreed to sell their interests and to execute the purchase agreement and quitclaim deeds, there is no binding contract for the sale of the land. Therefore, the trial court's order finding that the appellants are bound by the purchase agreement to sell their interests in the land is reversed, and this cause is remanded for proceedings consistent with this opinion.[6]
REVERSED AND REMANDED.
SEE, JOHNSTONE, WOODALL, and STUART, JJ., concur.
HOUSTON, LYONS, and HARWOOD, JJ., dissent.
[1] Throughout the record, Mary is referred to as both "Mary Rebecca Orton Newcomber" and "Mary Rebecca Orton Newcomer."
[2] None of the landowners reside in Alabama.
[3] According to the record, Virginia was pleased with the transaction and considers her undivided 1/5 interest to have been conveyed to the Pimperls. She was not a party to the action filed by the Pimperls.
[4] Section 6-6-223, Ala. Code 1975, provides, in pertinent part:
 "Any person interested under a . . . written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder."
Section 6-6-224, Ala. Code 1975, provides as follows:
 "A contract may be construed either before or after there has been a breach thereof."
[5] This amount apparently includes the $1,000 paid to Virginia to reimburse her for funds she had expended to redeem the land.
[6] Because Howard failed to appeal the trial court's judgment as to his interest in the land, and because Virginia has never been a party to this case, our holding does not reach the status of their interests in the Baldwin County property.